MARGARET HAUN, AS ADMINISTRATRIX OF THE ESTATE OF CHARLES HAUN, DECEASED, v. THE RIO GRANDE WESTERN RAILWAY COMPANY, A CORPORATION.

EXCEPTION—TO INSTRUCTIONS—WHEN TOO GENERAL. PERSONAL INJURIES—ACTION FOR DAMAGES—QUESTION FOR JURY—SECTIONS 447, 3478, AND 3479 R. S. 1898. AFFIRMATIVE AND NEGATIVE TESTIMONY—COMPARATIVE WEIGHT—ERRONEOUS INSTRUCTION. EVIDENCE—WEIGHT OF—GENERAL RULE AS TO AFFIRMATIVE AND NEGATIVE TESTIMONY—EXCEPTIONS. INSTRUCTIONS— IN ACTION FOR DAMAGES—PARTICULAR INSTRUCTION ERRONEOUS —NEGLIGENCE. NEGLIGENCE—BLOWING WHISTLE AND RINGING OF BELL—HOW SHOWN IN EVIDENCE.

*Exception—To Instructions—When too General.*

An exception to an instruction of a trial court that "the court erred in giving to the jury instruction No. ———, and to the giving of which plaintiff duly excepted," is a general exception which cannot be considered by the appellate court unless the whole instruction so excepted to is incorrect.[1]

*Personal Injuries—Action for Damages—Question for Jury—Sections 447, 3478 and 3479 R. S. 1898.*

Where in an action against a railroad company for damages for personal injuries, the question of defendant's negligence in failing to sound the whistle and ring the bell as required by Section 447 R. S. 1898, is, under the provisions of Sections 3478 and 3479 R. S. 1898, solely within the province of the

---

[1] *Scott* v. *M. & M. Co.*, 18 Utah, 486; *Wall* v. *Niagara M. & S. Co.*, 20 Utah, 474, 59 Pac. 399; *Pool* v. *Southern Pac. Co.*, 20 Utah, 210, 58 Pac. 326.

jury as well as the questions of the credibility of witnesses and the weight of their testimony, and in the discharge of their duty in this connection, they should not be restricted by an instruction.

*Affirmative and Negative Testimony—Comparative Weight—Erroneous Instruction.*

Affirmative testimony, unless of greater weight than negative testimony cannot be of higher character; so that an instruction, which instead of leaving the jury free to exercise its own judgment, in regard to the weight which should be given such testimony, in effect directs the jury in their deliberations to give greater weight to the affirmative testimony of defendant's credible witnesses, than to the negative testimony of plaintiff's credible witnesses, is erroneous.

*Evidence—Weight of—General Rule as to Affirmative and Negative Testimony—Exceptions.*

The general rule of evidence that affirmative testimony is of higher character and of greater weight than negative testimony is subject to two exceptions. 1. When negative witnesses who are credible and who were in a position where they could readily hear and see what transpired, and directed their attention thereto, testified that they did not see or hear the occurrence testified to by the affirmative witnesses; and 2, when negative witnesses who are credible were in a position where they could readily see and hear what transpired and directed their attention thereto, testify positively that the occurrences testified to by the affirmative witnesses did not happen.

*Instructions—In Action for Damages—Particular Instruction Erroneous—Negligence.*

In an action for damages for personal injuries, when the negligence of defendant depends upon whether it did or did not perform a certain act, an instruction that "positive testimony of credible witnesses, who were in a situation to know whether the whistle was blown, or the bell rung, to the effect that the whistle was blown and the bell rung, is of a higher character than the negative testimony of witnesses that they did not hear the whistle blown, nor the bell rung. But it is for you to determine from the testimony of the witnesses, and the surroundings, as shown by the testimony, whether

the whistle was blown or the bell rung on the train in question when it approached the crossing in question," is erroneous; and although the last part of it alone would have been proper, the restriction of the last proposition by the first makes them inseparable, and renders the whole instruction bad, in such manner that objection thereto may be taken advantage of by a general exception.

*Negligence—Blowing of Whistle and Ringing of Bell—How Shown in Evidence.*

> The negligence of defendant turning upon the question of whether or not a whistle was sounded or a bell rung as defendant's train approached a certain crossing, it is proper for plaintiff to show by his witnesses that if the whistle had been sounded or the bell rung they would have heard it, and exclusion of such testimony, when offered, is error.

(Decided September 28, 1900.)

Appeal from the Third District Court Salt Lake County. Hon. A. N. Cherry, *Judge.*

Action by plaintiff to recover damages for the killing of her husband alleged to have been caused by the negligence of defendant company.    From a judgment for defendant plaintiff appealed.    *Reversed.*

*J. J. Whitaker, Esq., Geo. Halverson, Esq.,* and *A. E. Pratt, Esq.,* for appellant.

The court erred in sustaining defendant's objection to the following question asked plaintiff's witness, John Graham, on direct examination.

"*Q.* Were you in a position, Mr. Graham, that had the train whistled you could have heard it ?

"It is a familiar practice to allow a witness, after he has described the situation, to state that he would have heard the whistle if it had sounded." *Chicago & A. Ry. Co.* v. *Dillon,* 123 Ill. 570; 15 N. E. 181; *Burnhan* v.

*Shenwood*, 56 Conn. 229; *Ill. Cen. Ry. Co.* v. *Slater*, (Sup.) 28 N. E. 131; *Ry. Co.* v. *Siltman*, 88 Ill. 531; 65 N. W. R. 527; See last edition Greenleaf on Ev. Sec. 440 and cases cited; *Seeley* v. *N. Y. Cen. & H. R. R. Co.*, 40 N. Y. S. 866.

Instruction No. 16 is error given in the language as follows:

"Positive testimony of credible witnesses who were in a situation to know whether the whistle was blown or the bell rung, to the effect that the whistle was blown and the bell rung, is of a higher character than the negative testimony of the witnesses that they did not hear the whistle blown or the bell rung. But it is for you to determine from the testimony and the witnesses and the surroundings as shown by the testimony, whether the whistle was blown or the bell rung on the train in question when it approached the crossing in question." (Abs. page 37.)

Because it invades the province of the jury, and ignores all modifying circumstances, and assumes that no positive testimony was offered by the plaintiff that no signals were given. *Louis* v. *Lake Shore, etc. Railway Co.*, 111 Mich. 458; *Humphries* v. *State*, 100 Ga. 260; *Con. St. Ry. Co.* v. *Bingham*, 105 Ga. 498; *Greany* v. *Long Isl. R. Co.*, 101 N. Y. 419; *State, et al.* v. *K. C. Ft. S. & M. Ry.*, 76 Mo. App. 634; *Farmers & M. B.* v. *Chaplin Transfer Co.*, 23 Vermont, 186; See 44 Ill. App. 342; 149 Ill. 202; *Lighthouse* v. *Chicago M. & St. P. Ry.*, 3 S. Dak. 518; *Kelley* v. *Shapp*, 60 Wis. 76; *Nelson* v. *Iverson*, 24 Ala. 9; *Standard* v. *Kelley*, Adx. 50 Ala. 452; *State* v. *Gates*, 20 Mo. 400.

*Messrs. Bennet, Harkness, Howat, Sutherland & Van Cott*, for Respondent.

It is insisted by the appellant that the court erred in sustaining the objection of the defendant to questions put

by the plaintiff's attorney to the witnesses Johnson ana Graham as to whether they were in a position where they could have heard the train if it had whistled.

In support of the contention counsel for appellant cite several cases which we have examined. In none of them, however, has the Supreme Court reversed a judgment of the court below for refusing to permit witnesses to testify as to whether or not they were in a position where they could have heard the train if it had whistled. They are all cases where the court below admitted that character of testimony, and the Supreme Court in the different cases refused to reverse the judgment of the court below because of the admission of that testimony.

It is the general rule that the witness shall state the facts, and not his conclusions from the facts. *Helton* v. *Railroad Co.*, 12 So. 276; *Houston, etc., Railroad Co.* v. *Smith*, 52 Tex. 178; *Taylor* v. *Railroad Co.*, 39 A. & E. R. R. Cases, 259 S. C., 10 S. E. 29; *McGeary* v. *Old Colony R. R.*, 41 At. 1007; *Kiesel* v. *Sun Office*, 88 Fed. 243; *Murray* v. *Railway Co.*, 16 Utah, 356; *Parkhurst* v. *Masteller*, 57 Iowa, 476; *Butler* v. *Iron Co.*, 22 Conn. 335.

Testimony of credible witnesses that they did not hear the bell rung or whistle blown is of a lower character than that of credible witnesses that they heard the bell rung or whistle blown. *Bohan* v. *Ry. Co.*, 61 Wis. 391 (21 N. W. 241); *Still* v. *Hindenkopers*, 17 Wall, 394; *Moran* v. *Ry. Co.*, 48 Minn. 46 (50 N. W. 930); *Hauser* v. *Ry. Co.*, 147 Pa. St. 440 (23 At. 766); *Ry. Co.* v. *Reed*, 40 Ills. App. 47; *Horn* v. *Ry. Co.*, 4 C. C. A. 346 (54 Fed. Rep. 301); *Culhane* v. *Ry. Co.*, 60 N. Y. 133, 137; *Ry. Co.* v. *Lane*, 33 Kan. 702 (7th Pac. 587); *Ry. Co.* v. *Pierce*, (Kan.), 18 Pac. 305; *Hess* v. *Ry. Co.* (Pa.), 37 At. 568.

BASKIN, J.

The plaintiff, who is the appellant, as administratrix of the estate of Charles Haun, deceased, instituted this suit to recover from the defendant corporation damages alleged to have been caused by the defendant in negligently and carelessly causing the death of said Charles Haun. Among the negligent acts alleged in the complaint are the following in substance: That the defendant, in violation of its duty, ran at a careless and negligent speed to wit, about fifty miles per hour, over the crossing of the public highway in the town of Murray, one of its trains, and negligently, carlessly and in violation of its duty failed to give warning of the approach of said train by sounding a whistle or ringing a bell, and that while the deceased was driving a team and wagon over the intersection of said public highway and the defendant's railroad, in said town of Murray, by reason of the alleged negligence and carelessness of the defendant, he was struck by said train and killed.

The answer denies the alleged negligence and carelessness and alleges that the death of the deceased was caused by his own negligence.

Among the instructions given to the jury by the court at the trial was the following: "Positive testimony of credible witnesses who were in a situation to know whether the whistle was blown or the bell rung, to the effect that the whistle was blown and the bell rung, is of a higher character than the negative testimony of witnesses that they did not hear the whistle blown nor the bell rung. But it is for you to determine from the testimony of the witnesses, and the surroundings, as shown by the testimony, whether the whistle was blown or the bell rung on the train in question when it approached the crossing."

This instruction was objected to by plaintiff's attorney,

and the objection having been overruled, a general exception thereto was taken. General exceptions were also taken to instructions Nos. 10, 11, 12, 13 and 14, each of which contain independent propositions, some of which are correct.

It is well settled, and has been frequently decided by this court that general exceptions will not be considered by the appellate court, unless the whole instruction so excepted to is incorrect. *Scott* v. *Min. & Mill Co.*, 18 Utah, 486, and cases there cited; *Wall* v. *Niagara Min. & Smelt. Co.*, 20 Utah 474, 59 Pac. 399; *Pool* v. *Southern Pac. Co.*, 20 Utah 210, 58 Pac. 326.

The exception to instruction No. 16 is as follows: "The court erred in giving to the jury instruction No. 16, and to the giving of which plaintiff duly excepted." A like exception was also taken to each of the instructions respectively numbered 10, 11, 12, 13 and 14.

The engineer and fireman on the train testified, on behalf of the defendant, that the whistle was blown and the bell rung. At least ten other witnesses, several of whom were passengers on the train testified, on behalf of defendant, that they heard the whistle, but were not asked, and did not testify whether or not the bell was rung.

On behalf of the plaintiff several witnesses who were in view of the place of the accident, and in a position where they could easily see and hear what transpired, testified that they neither saw or heard the whistle or the bell; that their hearing was good, and that their attention was directed to the approaching train, and to whether the whistle was blown and the bell rung.

On behalf of plaintiff Mrs. M. J. Leonard testified, as follows: "Observed the passenger train. * * * I just heard it coming there on a fast speed. *Q.* What attracted your attention? *A.* It was coming so fast and did not

whistle between the smelter and the station. *Q.* It didn't whistle where it usually whistles, did it? *A.* No, sir. *Q.* You say you observed it, and the train didn't whistle? *A.* Yes, sir; the train didn't whistle. *Q.* For the Murray station? *A.* Yes, sir. *Q.* It didn't ring the bell? *A.* No, sir."

On cross-examination she was asked the following questions, and answered, as follows: "*Q.* Of course you can't say that the whistle didn't blow, you can only say that you didn't hear it? *A.* I didn't hear it—it didn't blow between the Germania smelter and the station. *Q.* You testified that the bell didn't ring. Did you mean to say that you could have heard the bell ring had it been sounded? *A.* Yes, sir; I always can."

The sounding of a locomotive whistle and the ringing of a locomotive bell are events of such striking character as to naturally attract attention, and are readily heard and seen by persons of good hearing and sight, who are near by and are giving attention.

When, as in this case, two witnesses, the engineer and firemen who are employees of the defendant company, testify that such events occurred, and a greater number of other witnesses, who were near the place of the alleged events, and at the time of the alleged occurrence were in a position where they could have easily seen and heard such events had they occurred, testify that their attentions were directed to what transpired, but that notwithstanding their senses of hearing and seeing were good they neither heard nor saw such events, and one of the latter witnesses also positively testifies that no such events took place, the negative testimony of the latter witnesses, as a matter of law, is of as high a character as the affirmative testimony of the former witnesses, and such of the testimony as was negative in form should not be restricted by instructions,

22 Utah—23.

but should be submitted to the jury in no different light than the affirmative testimony.

Sec. 447, Rev. Stat. provides that, "Every locomotive shall be provided with a bell weighing not less than twenty pounds, which shall be rung continuously from a point not less than eighty rods from any street, road, or highway crossing, until such street, road, or highway shall be crossed, but the sounding of the locomotive whistle at least one-fourth of a mile before reaching such crossing shall be deemed equivalent to ringing the bell as aforesaid, except in towns and at terminal points; * * * Every person in charge of a locomotive, for any neglect to observe the provisions of this section shall be deemed guilty of a misdemeanor, and the corporation shall be liable for all damages which any person may sustain by reason of such neglect."

Whether the defendant blew the whistle or rung the bell, as required by this section, the jury, under the provisions of Secs. 3478 and 3479 Rev. Stat. was the sole judge, and as a consequence was also the sole judge of the credibility of the witnesses and the weight of their testimony, and in the discharge of this duty should not have been restricted.

The latter clause of the 16th instruction standing alone is correct, and if it had not been restricted we could not, under the well established rule before mentioned, have considered the general exception taken to the whole instruction. It was, however, restricted by the first clause of said instruction in this: The jury were instructed, not as a fact, but as a matter of law, that the testimony of credible witnesses, who were in a position to know and positively testified that the whistle did blow and the bell ring, was of a higher character than the testimony of the witnesses who testified that they did not hear the whistle

blow or the bell ring, and also of the witnesses who positively stated that the whistle did not blow and the bell did not ring.

Affirmative testimony, unless it is of greater weight than negative testimony, cannot be of higher character than the latter; so that the instruction as given, instead of leaving the jury entirely free to exercise its own judgment in regard to the weight which should be given to the testimony, in effect directed the jury to give in their deliberations, greater weight to the affirmative testimony of de-defendant's credible witnesses than to the negative testimony of the plaintiff's credible witnesses.

In the case of *Ohio & M. Ry. Co.* v. *Buck*, 30 N. E. Rep. 19, (Ind.) the court said: "The tenth instruction, to the effect that the jury should give greater weight to a positive statement of a witness than to a negative statement of another witness, is erroneous, and was not proper to have been given. It may be true in fact that under some circumstances greater weight should be given to the positive statement of one witness than to the negative statement of another; but it depends upon the circumstances, and is not true, as an abstract proposition of law, and is not a proper matter upon which to instruct the jury."

In the case of *State, ex rel.* v. *K. C. Ft. Scott & M. Ry. Co.*, 70 Mo. App. 641–642, the court said: "By the instruction above quoted defendant seeks to apply the rule that affirmative testimony is stronger than negative. And while now the rule is general, and may ordinarily be well applied, it yet has its exceptions and the reverse may be true; that is, negative testimony may justly outweigh the positive. As said by a learned Louisiana judge: 'Evidence of a negative nature may, under particular circumstances, not only be equal but superior to positive evi-

dence. This must always depend upon the question, whether the negative testimony can be attributed to inattention, error or defect of memory, and whether the witnesses had equal means and opportunities for ascertaining the facts to which they testify, and exercised the same. * * * It has been often held that it is not true, as a matter of law, that negative evidence may not be sufficient to overbalance positive testimony. (Citing authorities.) In such cases the jury or judge have to weigh, consider and decide for themselves somewhat regardless of general rules.'" *State* v. *Chevallier*, 36 La. Ann. 81; *Campbell* v. *New England M. L. Ins. Co.*, 98 Mass. 401.

In the case of *Louis* v. *Lake Shore & M. S. Ry. Co.*, 111 Mich. 458, five witnesses swore positively that the signals were not given, and gave their reasons why they so testified, and eighteen witnesses testified positively that the signals were given. The trial court refused to instruct the jury that affirmative testimony outweighed negative testimony, and the appellate court, in sustaining the trial court, said: "We do not think there was any negative testimony to which the request would have been applicable. * * * The situation before the jury was one of positive testimony against positive testimony, and their verdict depended on which they believed."

In the case of *Coughlin* v. *The People*, 18 Ill. 266, the instruction was as follows: "If the jury believe, from the evidence, that Higgins, Meacham, Harrison, Hyde, Gaylord and Demary are truthful witnesses, and that they swear positively to the fact that the defendant struck Higgins, such positive evidence should receive more consideration than any negative evidence there may be in the case." This instruction was held to be erroneous by the appellate court, and in the opinion, the court said: "Those wit-

nesses, if they had the same opportunity of knowing what the defendant did do on the occasion, and were equally faithworthy and likely to know and remember the facts with those who testified that the defendant did strike the blow, were entitled to equal credit, and their statements should have had equal weight and consideration. Their testimony was as positive, as to the fact in controversy, as the testimony of the people's witnesses, and if they had equal honesty, ability and opportunity of knowing what did transpire, and memory, their testimony would have had the same weight on a mind seeking to ascertain truth."

In the case of *Rockwood* v. *Poundstone*, 38 Ill. 200, the jury were instructed that "The affirmative testimony of a witness to a certain fact, as for instance, that he saw a government mound and ditch at a certain point, may be regarded by the jury as stronger proof, than the testimony of a witness who swears that he did not see such a mound and ditch." The appellate court in passing upon such instruction, said: "We do not understand it is the province of the court to tell the jury in a case where there is much and conflicting testimony, or indeed in any case, which evidence is the strongest. It is not true that affirmative testimony is to be preferred before negative testimony, so called, under all circumstances, and that is the purport of this instruction, and was calculated to bias the mind of the jury very much. The value of all testimony is to be ascertained by the jury weighing it and to find whichever way it may preponderate. This instruction should not have been given."

This decision has been followed and quoted with approval in more recent cases in Illinois. *Eastman* v. *West Chicago St. R. R. Co.*, 79 Ill. App. 585; *Railway Co.* v. *Brooks*, 81 Ill. 245; *A. T. & S. F. Ry. Co.* v. *Feehan*,

149 Ill. 202; *L., N. A. & C. Ry. Co. v. Shires,* 108 Ill. 617.

See, also, *Berg* v. *C. M. & St. P. Ry. Co.,* 50 Wis. 419; *Ubanek* v. *Ry. Co.,* 47 Wis. 59; *L., New Albany & C. Ry. Co.* v. *Stommell,* 126 Ind. 35; *State* v. *Gates,* 20 Mo. 400; *Consolidated St. Ry. Co.* v. *Beghan,* 105 Ga. 498; *Humphries* v. *The State,* 100 Ga. 260; *Kansas City, Ft. S. & G. Ry. Co.* v. *Lane,* 7 Pac. Rep. 587 (Kans.); 2 Jones on Ev., Sec. 901 and cases cited; *Bunting* v. *C. P. Co.,* 16 Nev. 280.

These authorities hold that the general rule of evidence that affirmative testimony is of a higher character and of greater weight than negative testimony is not applicable.

1. When negative witnesses who are credible, and who were in a position where they could readily hear and see what transpired, and directed their attention thereto, testify that they did not see or hear the occurrence testified to by the affirmative witnesses.

2. When negative witnesses, who are credible, were in a position where they could readily see and hear what transpired and directed their attention thereto, testify positively that the occurrences testified to by the affirmative witnesses did not happen.

In this case these exceptions only, and not the general rule, apply to the testimony disclosed by the record.

If there were no exceptions to the general rule, in question, affirmative testimony in no instance could be overcome by negative testimony, however strong and convincing the negative testimony might be.

Such an instruction as the one under consideration should not be given when the negative testimony is strong enough to support a verdict rendered in accordance therewith.

In view of the character of the testimony submitted to

the jury in this case, it was error for the court to state this general rule without stating its exceptions.    2 Jones on Ev. Sec. 901.

The following cases were cited by respondent's counsel in support of said instruction: *Bohan* v. *Ry. Co.*, 61 Wis. 391; *Moran* v. *Ry. Co.*, 48 Minn. 46; *Hauser* v. *Ry. Co.*, 147 Pa. St. 440; *Railway Co.* v. *Reed*, 40 Ill. App. 47; *Horn* v. *Ry. Co.*, 4 C. C. A. 346; *Stitt* v. *Huidekopers*, 17 Wall. 394; *Culhane* v. *Ry. Co.*, 60 N. Y. 133, 137; *Railway Co.* v. *Lane*, 33 Kans. 702; *Railway Co.* v. *Pierce*, 18 Pac. 305 (Kans.); *Hess* v. *Ry. Co.*, (Pa.) 37 Atl. Rep. 568.    The negative testimony involved in these cases was radically different from the negative testimony in the case at bar.    In the following quotation from the case in 61 Wis. 391, the negative testimony is stated, as follows: "The plaintiff and several witnesses introduced by him each testified that he saw the headlight of the approaching train when a short distance south of the depot platform, but saw no person on the forward end of the first gravel car, nor any light at that place, and that he does not remember to have heard the engine bell ring before the plaintiff was injured.    This is all the testimony which in any manner tends to throw doubt upon the statements of the defendant's witnesses as to the ringing of the bell or the presence of a lighted lantern on the gravel car."

The appellate court reversed the judgment in favor of plaintiff on the ground that the negative testimony was not sufficient to support the verdict, and that the motion for a non-suit in the court below should have been granted.

In the case in 147 Pa. St. 440, the court said: "The undisputed testimony was, that the train was running very slowly, between six and ten miles an hour, was about to stop to take on water, that the head-light was

burning, and, by the testimony of six witnesses, that the whistle was blowing and the bell rung, as the train approached the crossing. Against this there was no proof of negligence by the defendant, but there was very scant testimony of the plaintiff as follows:

"*Q*. Did you hear the blowing of the whistle that night of the train?"

"*A*. No, sir; if it did, I did not hear anything."

"*Q*. Did you hear the ringing of any bell?"

"*A*. No, sir."

She simply says she did not hear any whistle or bell, and as against the positive testimony of six witnesses, who did hear, her omission to hear is simply a scintilla of evidence which is not enough to make out a charge of negligence in that respect.

In the case in 33 Kans. 702, the trial court refused to instruct the jury that "The law esteems positive testimony more highly and of more value than testimony of a negative character," and the appellate court, in sustaining the trial court, in the opinion said: "But while the request as a general statement of the rule of evidence, is correct, we do not regard its refusal as error. As presented, it ignored all modifying circumstances and assumed that no positive testimony was offered by the plaintiff that no signal was given. The testimony of one who was in a position to hear, and who was giving special attention to the sounding of the whistle, that it was not sounded, while negative in form, is a positive statement of fact, and where the witnesses had equal opportunity to hear the whistle, and are equally credible, it is generally of as much value as the testimony of one who states that it was sounded."

All of the other cases cited on this point by respondent's counsel, except the cases in 17 Wall. and 54 Fed. Rep.,

are similar to those quoted from, and tend to support the contention of the appellant, rather than that of the respondent.

In the Federal Courts, as in those of England, from which the federal practice was derived, the judge, in submitting the case to the jury, may express his opinion on the weight of the testimony, provided, the jury are made distinctly to understand that the "instruction was. not given as a point of law by which they were to be governed; but as a mere opinion as to the facts, and to which they should give no more weight than it was entitled to." The expression of such an opinion when no rule of law is incorrectly stated, and the facts are left to the jury without restriction, cannot be reviewed on writ of error in the Federal Appellate Courts. *Tracy* v. *Swartwood*, 10 Pet. 95; *Cal. Ice Co.* v. *Union Compress Co.*, 133 U. S. 417; *Bucker* v. *Wheeler*, 127 U. S. 93; *Lovejoy* v. *United States*, 128 U. S. 173.

In this case the instruction, in view of the negative testimony adduced, incorrectly stated the law.

The instruction which was sustained in the case of *Stitt* v. *Huidekopers*, 17 Wall. 385, in the use of the following language, to-wit: "It is a rule of presumptions that ordinarily a witness who testifies to an affirmative is to be preferred to one who testifies to a negative," recognized that there were exceptions to the general rule. The testimony in that case was different from the testimony in the present case. The plaintiff denied the receipt of certain papers, and the two defendants swore positively that they were delivered. It appears that numerous papers, among which were the ones in dispute, passed between the parties in a complicated transaction beginning in August, 1864, and continuing into the month of January, 1865. The case was not finally determined in the supreme court until the

October term, 1873. What time had elapsed between the alleged date of these papers and the date the witnesses testified does not appear. The reason given for the instruction was that "He who testifies to a negative may have forgotten; that it is possible to forget a thing that did happen, but that it is not possible to remember a thing that never happened." The time which elapsed between the date of the accident in this case and the trial, was not of such length, nor were the attending circumstances of such a character as to render it probable that the memories of the negative witnesses were at fault.

In the case of *Horn* v. *B. & O. Ry. Co.*, 54 Fed. 301, at the close of the plaintiff's evidence a non-suit was granted. Swan, District Judge, in stating the facts, said: "Several witnesses testified positively that the whistle was sounded, while there is negative testimony from others that they did not hear it."

It does not appear in that case, as it does in the case at bar, that the negative witnesses were in a position to easily see and hear, and that their attention was directed to the train.

We do not think that either of these Federal cases support the contention of the respondent.

The restriction, in the instruction, of the second proposition by the first makes these propositions inseparable, and the instruction as a whole bad. The general exception thereto was therefore well taken and should have been sustained.

John Graham was asked, by plaintiff's attorney, this question: "Were you in a position, Mr. Graham, that had the train whistled you could have heard it?" To this question and the following one, the defendant's attorney objected, the objection was sustained and the plaintiff excepted.

Peter Johnson was asked, by plaintiff's attorney, this question: "Now I will ask you, if in your opinion, had they rung a bell you could have heard it?"

We think the following statement in the opinion in the case of *C. & A. Ry. Co.* v. *Dillon*, 123 Ill. 570, is correct, to-wit: "Questions of this character are constantly permitted by the most enlightened judges, and we are aware of no authority questioning the propriety of allowing them."

Several witnesses in that case were allowed to testify, notwithstanding objections were interposed, that in their opinion, if the bell had been rung or the whistle sounded, they would have heard it.

It is ordered that the judgment be reversed, and that the case be remanded with directions to the court below to grant a new trial, and that the respondent pay the costs.

I concur in the judgment.          BARTCH, C. J.

To my mind the testimony of witnesses who say they heard the bell ring and the whistle sounded is of no more weight than that of those who say they did not hear, provided, the witnesses were placed in the same situation, and had equal means and opportunities for hearing and ascertaining the facts, and had equal interest in the subject-matter of the testimony. One of several parties engaged in conversation, if waiting for and expecting the arrival of a train, may readily hear the whistle or bell, while other persons having no interest in its arrival, and not having their attention directed to it, may not hear the bell or whistle. One man may do a certain act in the presence of another who may not observe it because his attention is not directed to it, or is distracted at the time of the occurrence. So one may hear the whistle of a locomotive, while another in a like situation may have his

attention directed to another matter at the time so that he may not hear it. In such case, where witnesses are of equal credibility, the positive testimony should have greater weight than the negative. So, if certain credible witnesses, who are in a situation to hear, see and know whether the bell was rung or not, testify that the bell was rung, and other witnesses occupying a different situation, testify that they did not hear it rung, the positive testimony should outweigh the negative testimony. But this must depend upon the question whether the negative testimony can be attributed to want of attention, failure of memory, or whether they had equal means and opportunities for ascertaining the facts in question.

The court instructed the jury that "Positive testimony of credible witnesses who were in a situation to know whether the whistle was blown or the bell rung, to the effect that the whistle was blown and the bell rung, is of a higher character than the negative testimony of witnesses that they did not hear the whistle blown nor the bell rung. But it is for you to determine from the testimony of the witnesses, and the surroundings, as shown by the testimony, whether the whistle was blown or the bell rung on the train in question when it approached the crossing in question."

By the instruction given the court expressly limits the weight of the positive testimony to "credible witnesses who are in a situation to know whether the whistle was blown or the bell rung," as compared with those of the other class who did not hear the whistle blown or the bell rung, but who were not in the same position as those who did hear it. And in the same connection the jury were instructed, in effect, that notwithstanding this it was for them to determine from the testimony of the witnesses, and the surroundings, as shown by the testimony, whether

the whistle was blown or the bell rung when the train approached the crossing.

By this instruction the whole question was fairly submitted to the jury for their determination. In my opinion the court committed no error in giving the instruction, as a whole, because a distinction was made between the positive and negative testimony, and because all the testimony was finally left for the consideration of the jury.

As held by the court in *Stitt* v. *Huidekopers*, 17 Wall. 394, "It is a rule of presumptions that ordinarily a witness who testifies to an affirmative is to be preferred to one who testifies to a negative, because he who testifies to a negative may have forgotten. It is possible to forget a thing that did happen. It is not possible to remember a thing that never existed." *Olson* v. *O. S. L. Ry. Co.*, 9 Utah, 129; *Bohan* v. *Ry. Co.* 61 Wis. 391; *Stitt* v. *Huidekopers*, 84 U. S. 394.

I am also of the opinion that the court erred in rejecting certain testimony offered by the plaintiff tending to show that plaintiff's witnesses could have heard the whistle had it been sounded. The situation, locality and opportunity of the witnesses were shown and the testimony should have been admitted.

I concur in the order granting a new trial. MINER, J.