493 P.2d 119

**The STATE of Arizona, Appellee,**

v.

**Robert L. MORROW, Appellant.**

**No. 2296.**

Supreme Court of Arizona,
In Banc.

Feb. 3, 1972.

Gary K. Nelson, Atty. Gen. by Paul J. Prato, Asst. Atty. Gen., Phoenix, for appellee.

Wilson & Russin by Alexander Russin, Holbrook, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal from a conviction and judgment of guilt to the crime of assault with intent to commit murder in violation of § 13–248 A.R.S. and a sentence of not less than 12 years nor more than 15 years.

We are asked to determine:

1. Did the trial court commit error in permitting hearsay statements of the victim, identifying the defendant as his assailant?

2. Was there an alleged conspiracy between the County Attorney and the defense counsel?

The facts necessary for a determination of this matter are as follows. On the night of 30 November 1970, R. B. Penrod was

stabbed at the doorway to his home approximately 17 times. He was able to wrestle the knife away from his assailant, at which time his assailant fled. The victim managed to get to the phone and called his nephew, Gerald Penrod. Gerald Penrod came to the victim's house within 5 to 7 minutes and asked the victim "who did it", to which the victim responded "Robert Morrow"—the defendant. The victim also made a positive in-court identification of the defendant.

Later that night the defendant was asked to come to the Sheriff's Office in Pinetop. He was there arrested and charged with the crime of which he was later convicted.

## WAS THE HEARSAY STATEMENT PROPERLY ADMITTED?

The defendant's first assignment of error concerns the admissibility of a hearsay statement made by the victim to Gerald Penrod shortly after the crime and testified to by Gerald Penrod at the trial. The following testimony by Gerald Penrod was admitted at trial over objection by defense counsel:

> "THE COURT: Tell us what was said at the time you said that he told you something about the events, the first time out there at the house while you were placing the towels on him, was it?
>
> "THE WITNESS: Yes. When I asked him and what he told me?
>
> "THE COURT: If that's the order it happened, yes.
>
> "A I asked him what happened and who did it and he said Robert Morrow and I said is that the one they call Cotton and he said yes."

■ There is no doubt that this testimony is hearsay and as such is generally inadmissible. The State contends that it was properly admitted under the spontaneous or excited utterance exception to the hearsay rule. We have recently stated:

> "This State is committed to the Wigmorian view of excited utterance exception to the hearsay rule. 6 Wigmore on Evidence (3rd Ed.), § 1750, p. 142, et seq.
>
> 'These statements would obviously be hearsay unless they are admissible under the "excited utterance" or "spontaneous exclamation" exception to the hearsay rule. The requisites for an "excited utterance" are as follows:
>
> 1. There must be a startling event.
>
> 2. The words spoken must be spoken soon after the event so as not to give the person speaking the words a time to fabricate.
>
> 3. The words spoken must relate to the startling event. State v. McLain, 74 Ariz. 132, 245 P.2d 278 (1952).'
>
> "State v. Hunt, 2 Ariz.App. 6, 16, 406 P.2d 208, 218 (1965)." State v. Dixon, 107 Ariz. 415, 489 P.2d 225, 227, 228 (1971).

In this case, there most certainly was a startling event, the stabbing. The statement in question in this case was made by the victim approximately five to seven minutes after the event, at a time when the victim was still acting under the influence of the stabbings and had not had time to deliberate and fabricate the words relating to the stabbing. Considering the circumstances under which the statement was made, we feel that it is unlikely that the victim fabricated his story during the five to seven minute interval which elapsed between the stabbing and the time the statement was made. We hold that the statement was properly admitted into evidence at trial as an "excited utterance" exception to the hearsay rule.

## WAS THERE A CONSPIRACY?

■ The defendant, but not his attorney on appeal, further alleges that a conspiracy existed between the County Attorney and the defense counsel which allegedly had the effect of depriving him of his constitutional rights. However, the defendant cites to us no specific examples of any conduct which

might indicate that a conspiracy existed, nor. can we find any indication of a conspiracy from the record. To the contrary, the transcript of the trial court proceedings discloses vigorous representation by the defense counsel. Since we are unable to find any indication of a conspiracy, and since we. have stated that we will not reverse a conviction upon the ground of inadequate assistance of counsel unless the accused can show that his representation was a farce or a sham, shocking to the conscience, or a mockery of justice, State v. Tinghitella, 108 Ariz. 1, 491 P.2d 834, filed 17 December 1971; State v. Brookshire, 107 Ariz. 21, 480 P.2d 985. (1971), we find no merit in this contention.

We have reviewed the entire record in this matter as we are required to do, § 13–1715 A.R.S., and we can find no error requiring a reversal of this conviction.

Judgment affirmed.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.