517 P.2d 81

**STATE of Arizona, Appellee,**

v.

**Floyd Calvin LOVELY, Appellant.**

**No. 2598.**

Supreme Court of Arizona,
En Banc.

Dec. 20, 1973.

Gary K. Nelson, Atty. Gen. by Peter M. Van Orman, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by James H. Kemper, Former Deputy Public Defender, Phoenix, for appellant.

HAYS, Chief Justice.

Defendant was found guilty by a jury of the crime of lewd and lascivious conduct and was sentenced to prison for a term of not less than 25 nor more than 30 years. His sole defense was alibi. The victim was his seven-year-old stepdaughter. On appeal, he raises three issues:

**I**

*Was it error to allow a police officer to testify as to the victim's hearsay account of . the crime given to the officer two weeks after the crime took place?*

The little girl testified that crime was committed on December 26, 1971, in her living room, and that defendant attempted to repeat the acts on January 1, 1972, at which time she became ill and feverish and commenced crying, so that the attempt was abandoned. However, the child's condition attracted her mother's attention, and the facts came to light. The little girl testified that similar acts had been committed previously some ten or twelve times, on different days.

Although the facts came to light on January 1, the police interrogation of the child did not take place until January 9—approximately two weeks after the crime took place.

At the trial, after the State had rested, defense counsel called Police Officer Nixon and proceeded to elicit testimony that he interviewed the victim at length; that she told him the complete story in detail; that he took down all the facts recited by her; that she described the lascivious acts and told him her stepfather was the man who had committed them; that the officer wrote up all the details in a police report of the incident; and that the victim had told him that the acts had taken place in the bedroom of her house, rather than in the living room, which was her testimony at the trial. The State, on cross-examination, then brought out in detail the lascivious acts which the little girl had related to the policeman. This was objected to as hearsay, but the objection was overruled. On redirect examination, defense counsel had the officer again describe the same lascivious acts!

■ Defendant argues that the testimony of the officer was hearsay. Clearly it was. The State argues that, as a part of the res gestae, it was an exception to the hearsay rule. Clearly it was not. The conditions necessarily present to invoke the rule of res gestae are so well settled that it is unnecessary to repeat them. One of them is that the statements of the victim be made very soon after the time of the crime and before the victim has had a chance to consider the matter and fabricate

a new story or amend the true story. State v. Morrow, 108 Ariz. 108, 493 P.2d 119 (1972); State v. Finley, 85 Ariz. 327, 338 P.2d 790 (1959); State v. Randolph, 99 Ariz. 253, 408 P.2d 397 (1965); State v. McLain, 74 Ariz. 132, 245 P.2d 278 (1952); State v. Lopez, 107 Ariz. 214, 484 P.2d 1045 (1971). Our most recent case is State v. Urbauer, Ariz., 514 P.2d 717 (1973), in which four and one-half hours was held too long a lapse of time to allow the statement as an exception to the hearsay rule.

■ The State counters this argument by invoking the rule that whenever part of a conversation is given in evidence by one party, the other may offer the whole conversation. This is the general rule. Udall, Arizona Law of Evidence, § 11, p. 21; McCormick on Evidence, § 56 (1st ed. 1954). While there are exceptions and special situations in which the rule does not apply, it is our opinion that the rule should be applied in the instant case. *See* Turley v. State, 48 Ariz. 61, 59 P.2d 312 (1936); and Inspiration Consolidated Copper Co. v. Bryan, 31 Ariz. 302, 252 P.2d 1012 (1927).

## II

*Should the trial court have granted a new trial because of the misconduct of one or more of the jurors?*

■ A juror was permitted to testify that during lunch one of the jurors pointed to a second juror and said: "That juror is going to be the foreman." That juror actually did become the foreman of that jury. The alternate juror testified that one of the jurors, immediately after a session at which defendant's witnesses were heard, said: "Trash. I have never seen such trash in all my life." She also testified that she had smelled a strong odor of alcohol on the breath of another juror. A third juror confirmed that she heard and saw the juror "pick" the foreman. Also, one of the jurors is said to have made the statement, prior to deliberations, that they might as well take a straw vote because it would be much faster, and they already knew how they were going to vote. De-

fendant argues that under Babb v. State, 18 Ariz. 505, 163 P. 259 (1917), jury conduct will be presumed prejudicial if it is serious enough. We disagree. It held that where a jury was allowed to read a newspaper article which distorted the facts in a manner derogatory to the defendant, a new trial would be granted. In the instant case, although there were some irregularities in the conduct of the jury, we see no prejudicial error. The defense was alibi; the child knew her own stepfather; and the jury believed her and disbelieved the alibi.

### III

*Should the trial court have granted a new trial because of misconduct of the prosecuting attorney?*

Defendant claims that the prosecutor, Joseph Abodeely, during the testimony of defense witnesses, was making faces towards the jury which conveyed the impression that he did not believe the testimony being given. That "he would lift his eyes towards the heavens as though . . . who could believe an answer like that?" More than one juror verified this, and we see no denial by the prosecutor. If such conduct took place, it is clearly unethical. We do not agree with the State's argument that it is not an expression of opinion as to the prosecutor's personal belief in the veracity of the witness. It is worse. It is an attempt to convey the impression of disbelief, without doing so audibly, so that defense counsel doesn't know that it is taking place. We condemn it strongly. However, we doubt whether it had an appreciable effect on the verdict, and as we said in State v. Moore, 108 Ariz. 215, 495 P.2d 445 (1972):

> "Misconduct alone will not cause a reversal, as a new trial should not be granted to punish counsel . . ." 495 P.2d at 452.

Judgment affirmed.

CAMERON, V. C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.