SPENCER H. FOULKE *vs.* THE WILMINGTON CITY RAILWAY COMPANY, a corporation of the State of Delaware.

*Case—Injuries to Horses and Wagon—Negligence—Making Cross-ing at Steep Down Grade—Duty of Company and of Driver of Team—Funeral Procession at Intersection of Streets— Right of Way—Usage or Practice of Company— Testimony as to Ringing of Bell ; Value of— Damages.*

1.   There is no law requiring a trolley car to stop at the  intersection of streets and wait until a funeral procession has passed, nor is there any law giving to a funeral procession the  right of  way  over  cars  or other vehicles or persons properly using a highway of this state.  If  by  courtesy such privilege  has  been  given, it imposes no duty upon the person  extending it, nor does it relieve any person from all reasonable care in so using the highway as to prevent accident.   If there was a uniform and con-tinuous usage or practice of the company to stop its  cars at crossings and  wait until a funeral  procession  passed  by, and such usage was known to, and relied upon, by the driver of the injured team at the time of the accident, such usage may be  taken  into

account by the jury in estimating the degree of diligence required of the driver of the team. In such case the driver might reasonably infer, or presume, the continuance of the usage. To justify such presumption, however, such usage must have been uniform and continuous; and it would not relieve the driver of reasonable care in making such crossing. No legal right can grow out of a mere courtesy, however uniform and long continued, nor will such courtesy impose a legal obligation upon the person extending it.

2. While the law does not impose upon the motorman of the car an impossibility, it does require him when approaching a crossing at a steep down grade to make the descent at such reasonable speed as not to put the car beyond his control. It is, however, the duty of the driver of a team to use all reasonable care and caution to prevent accident.

3. The testimony of witnesses who swear they heard the car bell ring is of more weight than that of those who merely swear they did not hear the bell ring, which might reasonably be attributed to a want of attention at the time. Such negative testimony is usually of little value.

(*June 2, 1905.*)

Lore, C. J., and Grubb and Pennewill, J. J., sitting.

*Horace G. Knowles* for plaintiff.

*Walter H. Hayes, George N. Davis* and *Herbert H. Ward* for defendant.

Superior Court, New Castle County, May Term, 1905.

Action on the case (No. 149, September Term, 1904), to recover damages for injuries to plaintiff's livery team, consisting of two gray mares harnessed to a landeau, by reason of a collision with defendant's trolley car, at Fourth and Tatnall Streets crossing in Wilmington, April 27, 1904, alleged to have been caused through the negligent operation thereof by defendant's servants.

Lore, C. J., charging the jury:

Gentlemen of the jury:—Spencer H. Foulke, the plaintiff in this action, claims that on the 27th day of April, 1904, at Fourth

and Tatnall Streets crossing in this city, one of his livery teams, consisting of two gray mares harnessed to a cab or landeau, was run into and injured by a trolley car of the defendant company, negligently operated.   He alleges that at the time of the accident his team was crossing Fourth Street, going northerly up Tatnall Street, as one of the coaches in a funeral procession; that the colliding trolley car of the defendant company was going easterly on Fourth Street, down a steep grade, at a high rate of speed, without ringing the bell or giving proper warning of its approach.   He claims that his actual loss and expenditures by reason of the accident were $497.10.   These damages he seeks to recover by your verdict in this suit on the ground that they resulted from the negligence of the defendant company.   The negligence relied on is: (1) High and dangerous rate of speed of the car, which was approaching on a steep down grade; (2) the failure of the motorman to ring the car bell or give other proper warning; (3) the violation of a uniform usage, custom, or practice on the part of the defendant company to stop the cars for the funeral procession, and wait until the procession had passed by.   The defendant denies all of these allegations, and claims that the accident was not the result of its negligence, but of the negligence of the plaintiff, if there was any negligence in the case.

We know of no law requiring a trolley car to stop at the intersection of streets and wait until a funeral procession has passed, nor of any law giving to a funeral procession the right of way over cars or other vehicles or persons properly using a highway of this State.   If by courtesy such privilege has been given by trolley cars and by others using the highway, such courtesy imposes no duty upon the person extending the courtesy, nor does it in any manner relieve any person from all reasonable care and precaution in so using the highway as to prevent accident or injury.   If you should find from the evidence in this case that the uniform and continuous usage or practice of the defendant company had been to stop its cars at crossings and wait until a funeral procession passed by, and that such usage was known to, and reasonably relied upon by the driver

of the injured team at the time of the accident, we say to you that such method of dealing with the public on the part of the company, and so known to the driver, may be taken into account by you in estimating the degree of diligence required of the driver in looking out for an approaching car before he crossed the railway track, for in such case he might reasonably presume or infer the continuance of that usage. To justify such presumption, however, such usage must have been uniform and continuous. Even then the failure to observe such usage would not amount to negligence on the part of the defendant company. It would not relieve the driver of reasonable care in making such crossing. He would have no right so to presume, if he actually saw the car coming down upon him, or if by the reasonable use of his senses he might have known of its approach. It may be stated as a general rule that no legal right can grow out of mere courtesy, however uniform and long continued, nor will such courtesy impose a legal obligation upon the person extending it.

It is conceded in this case that the grade of Fourth Street between West and Tatnall Streets is quite a steep down grade to the Tatnall Street crossing. While the speed of trolley cars is not limited by law, yet, in approaching such crossing, it was the duty of the motorman to make the descent at such reasonable speed as not to put the car beyond his control ; and, as the danger of collision increased, if he saw or could see the danger, it was his duty to use all the means in his power to check or stop the car. (*Price vs. Warner Co., 1 Pennewill, 472*). This does not impose upon the motorman, however, an impossibility. If he in fact did all that he could to control the speed of the car, under the circumstances, the company would not be liable. It was, however, equally the duty of the driver of the injured team to use all reasonable care and caution to prevent the accident. "We will not attempt to specify the precise acts of precaution which are necessary to be done or omitted by one in the management of an electric car, or by one in the management of a wagon, approaching a railway crossing. Such

acts must depend upon the circumstances of each case, and the degree of care required differs in different cases. The general rule is that the person in the management of the car and the person in the management of the wagon are bound to the reasonable use of their sight and hearing for the preventing of accident, and to the exercise of such reasonable caution as an ordinarily careful and prudent person, would use under like circumstances. What is due and proper care depends upon the facts in each case. Where the railway approaches the crossing at a steep down grade, or where the rails are wet and slippery, or where the view of the railway from the crossing street is obstructed by buildings or otherwise, greater care is required of the person in charge of the car than where the approach of the railway to the crossing is at or near the grade of the crossing, or where the rails are in their usual condition, or where the view of the railway is unobstructed. A person approaching a railway crossing with which he is familiar is bound to avail himself of his knowledge of the locality and act accordingly. If the approach of the railway to the crossing be down a steep grade, whereby it is more difficult to stop or check a car, the driver of the vehicle should exercise more care than might be necessary where the approach of the railway was by a slight decline, upon a level, or by an ascending grade." (*Brown vs. Ry. Co., 1 Pennewill, 336 ; Snyder vs. Peoples Ry., 4 Pennewill, 148, 149.*) Both the company and the driver of the team in this case were required to use such reasonable care as the circumstances demanded, an increase of care on the part of both being required when there is an increase of danger. " The right of each one using the highway must be exercised with due regard to the right of the other, and in a reasonable and careful manner, so as not unreasonably to abridge or interfere with the right of the other."

Some of the witnesses have testified that they heard the car bell ring, coming down the hill ; others that they did not hear it ring. The testimony of the former witnesses is, of course, of more weight than that of those who merely say they did not hear the

bell ring, which might reasonably be attributed to a want of atten-
tion at the time.    Such negative testimony is usually of little value.
  *Q. A. R. R. Co. vs. Reed, 5 Pennewill, 226.*

The gist of this action is negligence, and the burden of prov-
ing the negligence of the defendant company rests upon the plaintiff
in this case.    If there was no negligence on the part of the com-
pany, your verdict should be for the defendant.

Even if there was negligence on the part of the defendant, yet
if the negligence of the driver of the team contributed to the acci-
dent, or was the proximate cause thereof, your verdict should be
for the defendant.

If you believe that at the time of the accident each party was
using such reasonable care as the circumstances demanded, then the
collision was simply an unavoidable accident, and the plaintiff could
not recover.

Should you be satisfied from the evidence that the negligence
of the defendant was the sole and proximate cause of the alleged
injuries, your verdict should be for the plaintiff and for such rea-
sonable amount as will compensate him for his actual loss as dis-
closed by the testimony in this case.

Verdict for plaintiff for $434.