JAMES R. WHITE vs. THE WILMINGTON CITY RAILWAY COMPANY, a corporation of the State of Delaware.

Case—Personal Injuries—Evidence—Medical Testimony; When to be Offered—Funeral Procession; Custom of Railway in respect to—Knowledge of custom—Condition of Traffic at place of Accident; May be shown—Pleading—No Evidence to Support one Count—Motion to strike out, also for Nonsuit or for binding Instructions ,Refused—Negligence —Due Care—Weight of Negative Testimony—Damages.

1. In an action for personal injuries the orderly method to pursue at the trial is to first have the injuries described and identified either by the plaintiff himself, or by some other witness who could so testify, and then to call the physician to testify to the nature and extent of those injuries.

2. While there is no duty resting upon the railway company to stop and allow a funeral procession to pass, yet if they had been in the habit of doing it, and thereby induced on the part of drivers who were familiar with the custom the belief that they would stop, it entered into the question of the driver's negligence. It is not necessary to be alleged in the declaration of the plaintiff.

3. In order to testify as to the existence of such a custom the witness must be able to swear that it existed at the time of the accident. The inquiry must be directed to that time, and not generally.

4. The plaintiff may show that the street, at the place where the accident happened, was a much travelled street.

5. A count of the declaration which no evidence has been offered to support will not be stricken out before all the evidence is in, nor will the Court at any time direct a nonsuit or binding instructions as to such count.

6. A map or plot purporting to show the scene of the accident, is not admissible in evidences if the horizontal and vertical distances are represented on a different scale.

7. There is no law requiring a trolley car to stop at the intersection of streets and wait until a funeral procession has passed, nor any law giving to a funeral procession the right of way over cars or other vehicles or persons properly using the highway. If by courtesy such privilege has been given it imposes no duty upon the person extending the courtesy, nor does it relieve such person from using reasonable care.

8. If it was the uniform and continuous usage or practice of the company to stop its cars at crossings and wait until a funeral procession passed by, and such usage was known to, and relied upon, by the plain-

tiff, such usage may be considered by the jury in estimating the degree of diligence required of the plaintiff. A failure, however, to observe such usage would not amount to negligence on the part of the company, nor would it relieve the driver of the carriage of the duty of exercising due care.

9.   While the speed of trolley cars is not limited by law, yet in approaching a crossing where the grade is steep, it is the duty of the motorman to make the descent at such reasonable speed as not to put the car beyond his control.

10.   The testimony of witnesses who testify that they heard the car bell ring is of more weight than that of those who merely say they did not hear it ring. Such negative testimony is usually of little value.

*(June* 16, 1906.)

LORE, C. J., and GRUBB and PENNEWILL, J. J., sitting.

*Levin Irving Handy* and *Herbert L. Rice* for plaintiff.

*Walter H. Hayes* and *Andrew C. Gray* for defendant.

Superior Court, New Castle County, May Term, 1906.

ACTION ON THE CASE (No. 172, September Term, 1904), to recover for personal injuries received by the plaintiff by being thrown from a coach which he was driving in a funeral procession at Fourth and Tatnall Streets in Wilmington on April 27, 1904, through a collision of one of the cars of the defendant company with said coach, which collision the plaintiff claimed was due to the negligence of the servants of the defendant company.

The allegations of negligence set out in the declaration were, (1) failure on the part of the company to give proper and due notice of the approach of the car by ringing the bell or otherwise; (2) general negligence in running the car; (3) defective machinery and appliances of the car. The defendant relied upon the plea of not guilty.

At the trial, it was admitted by counsel for the respective parties that the trolley car which caused the injuries complained of was owned and operated at the time of the accident by the defendant company; that the tracks on Fourth Street on which the said trolley car was running were legally there and that the company had the right to operate its trolley cars on said tracks

at that time; also that the defendant corporation was a corporation of the State of Delaware.

After three witnesses had testified as to the accident (none of whom had described the character of the injuries to the plaintiff resulting therefrom, but had only stated that they saw him thrown from the cab under the front of the car, saw him taken out and assisted over to the switch and saw blood upon his face), Samuel G. Elbert, a witness for the plaintiff and the attending physician was called to prove the extent of said injuries and the treatment given the plaintiff by him.

Counsel for defendant objected to the physician's testifying concerning the injuries to the plaintiff until the plaintiff himself, or some other witness, had been put upon the stand and had described and identified plaintiff's injuries and thus connected them with the injuries which the physician treated him for, contending that otherwise they would be deprived of the opportunity to cross-examine the physician to ascertain whether the injuries for which the plaintiff was treated were the identical injuries received in the said accident.

LORE, C. J.:—While we have frequently allowed the physician, as a matter of convenience to him, to testify out of order in a case of this kind, yet where it is objected to, as in this case, the orderly method to pursue is to first have the injuries described and identified either by the plaintiff himself or by some other witness who could so testify, and then to call the physician to testify to the nature and extent of those injuries. As the physician is called to speak of certain injuries which he saw some time after the accident happened and does not know of his own knowledge that those were the injuries actually received in this particular accident, we think the logical method to pursue is to prove the injuries first by competent testimony and then let the physician state his observations of those injuries. That is the logical method of procedure, and we see no reason for departing from it. We therefore sustain the objection.

*William W. Cahall*, was produced as a witness for plaintiff, and after testifying that he had worked for over a year as a

motorman for the Wilmingtion City Railway Company, the defendant, on its different trolley car lines in the City of Wilmington, but at the time of testifying was a boiler-maker's helper, was asked by Mr. Rice the following question: "Is there a custom, general and uniform, established by the Wilmington City Railway Company, for its trolley cars to stop and allow a funeral procession to pass across its tracks without interruption?"

(Objected to by counsel for defendant on the ground that there was no allegation in plaintiff's declaration of any such custom and that the question was therefore irrelevant.)

LORE, C. J.:—We admitted this same question, after objection and argument, in the case of *Foulke vs. The Wilmington City Railway Company* (5 *Pennewill* 363), although there it was not alleged in the declaration, on the ground that while there was no duty resting upon the defendant company to stop and allow a funeral procession to pass, yet if they had been in the habit of doing it and thereby induced on the part of drivers who were familiar with the custom the belief that they would stop, it entered into the question of the driver's negligence. We do not think it is necessary to be alleged in the declaration, and therefore overrule the objection.

*Samuel Robinson*, another witness for plaintiff, after he had testified that he had worked for the Wilmington City Railway Company as a motorman from May, 1905, until about the 14th or 15th of July, 1905, was asked the same question regarding the said custom. Counsel for defendant objected to the witness answering as to custom on the ground that the witness was not qualified to speak of any custom that existed in April, 1904, at the time of the accident, as his knowledge of the same did not begin until a year after the accident.

LORE, C. J.:—We sustain the objection to the question.

*Everett Kandle*, another witness for the plaintiff, after testifying that he was one of the drivers in the funeral procession in which the plaintiff was injured, on April 27, 1904, and saw the accident, also that he had driven funeral cabs in Wilmington for ten or twelve years, was asked the same question as

above stated in regard to the custom of the Wilmington City Railway Company to stop its cars and let a funeral procession pass across its tracks without interruption. This was objected to by counsel for defendant on the same grounds as before stated and as irrelevant because it was not confined to the time of the accident.

LORE, C. J.:—The question in that broad form is objectionable, upon the ground stated by counsel for defendant. You must connect it with the time of this alleged injury.

The witness was then asked the following question: "Was there a custom at and before the 27th of April, 1904, general and uniform, established by the Wilmington City Railway Company for its cars to stop and allow a funeral procession to pass across its tracks without interruption?"

(Objected to by counsel for defendant on the grounds above stated and also as leading).

LORE, C. J.:—We overrule your objections and admit the question.

Q. Did you know the condition of Tatnall Street at its intersection with Fourth Street, at or just previous to April 27th, 1904, concerning the traffic on that street between two and four o'clock in the afternoon?

(Objected to by counsel for defendant as irrelevant, there being no allegation in the declaration covering the matter inquired about; that it was an effort to set up a duty on the defendant).

LORE, C. J.:—We have allowed that to go in in the case of *Foulke vs. Wilmington City Railway Company* to show whether it is a much-traveled street or otherwise. It is not a duty on anybody, but a condition of things surrounding the case. We overrule your objection.

When the plaintiff rested, counsel for defendant made the following motions:

(1) That the third count of plaintiff's declaration (as to defective machinery and appliances) be struck out, because there had been no evidence offered to support it; or (2) that as

to the third count a nonsuit be entered for the lack of evidence to support it; or (3) that the jury be instructed to find a verdict for the defendant on the third count.

LORE, C. J.:—As to your separate motion to strike out the third count we think that that application, if made at all, should be made when the evidence is all in on both sides. Then if if there be no evidence to sustain the count, we would instruct the jury that that count is out of the case. But as to your motion that a nonsuit be granted because there is no evidence to support the third count, we would remind counsel that with the third count (which is but one-third of the case), out, there would still be remaining the first and second counts, and we cannot grant a nonsuit on a third of the case, and we cannot grant a nonsuit on the first two counts. Nor can we instruct the jury to find for the defendant on the third count now, because there are two counts upon which there has been evidence offered to the jury, and we cannot instruct the jury to return a verdict on one count and leave the other two good ones out of the question.

*Francis A. Price*, a civil engineer, was produced as a witness for defendant and testified to the plot which he had made from measurements of the locality at Fourth and Tatnall Streets, the scene of the accident, representing the horizontal distances of the same on a scale of ten feet to the inch, and the vertical distances (the slope of the ground) on a scale of two and one-half feet to the inch.

The said plot was offered in evidence by counsel for defendant, and the same was objected to by Mr. Handy, of counsel for plaintiff, on the ground that the map or plot, according to the testimony of the witness and as shown by the plot itself, was a distorted plot because of the difference in the horizontal and vertical scale, and therefore showed a much steeper grade than would be shown if both horizontal and vertical distances were drawn to the same scale. The objection was sustained. Mr. Hayes then cut from the plot that portion which showed the slope of the ground, leaving only the horizontal distances remaining and again offered the same in evidence. Mr. Handy

again objected and the plot in its altered form was admitted in evidence.

LORE, C. J., charging the jury:

Gentlemen of the jury:—James R. White, the plaintiff in this action, claims that on April 27, 1904, while driving a pair of horses attached to a cab (which was one of the cabs in the funeral procession of one Manuel Richenburg), up Tatnall Street in the City of Wilmington, in a northerly direction and crossing Fourth Street, his cab was struck by a trolley car of the defendant company coming easterly on Fourth Street down a steep grade; the said trolley car then being run, as he alleges, without due and proper warning or signal of the approach of the car either by bell or otherwise; that by the force of the collision he was thrown from the driver's seat on the coach to and upon the ground and thereby was severely and permanently injured. For such injuries, which he claims resulted from the negligence of the defendant company, he seeks to recover damages in this action.

The negligence set out in the declaration is (1) Failure on the part of the company to give proper and due notice of the approach of the car by ringing the bell or otherwise; (2) general negligence in running the car, and (3) defects in the machinery and appliances of the car.

There being no proof of any defect in the machinery or appliances of the car, you must dismiss that point from your consideration altogether, and confine your attention to the other allegations of negligence in the case; viz., the failure to give proper warning of the approach of the car by the ringing of the bell or otherwise, and general negligence in running the car.

The defendant company denies that it was guilty of any negligence whatever on its part and claims that the negligence, if any there was, was that of the plaintiff in carelessly driving in front of a car in plain view coming down a steep grade.

Some stress has been laid by the plaintiff upon a uniform usage, custom or practice on the part of the defendant company, to stop its cars for a funeral procession and wait until the procession had passed by.

The defendant denies the existence of any such custom.

We know of no law requiring a trolley car to stop at the intersection of streets and wait until a funeral procession has passed; nor of any law. giving to a funeral procession the right of way over cars or other vehicles or persons properly using a highway of this State. If by courtesy such privilege has been given by trolley cars and by others using the highway, such courtesy imposes no duty upon the person extending the courtesy, nor does it in any manner relieve such person from all reasonable care and precaution in so using the highway as to prevent accident or injury.

If you should find from the evidence in this case, that the uniform and continuous usage or practice of the defendant company had been to stop its cars at crossings and wait until a funeral procession passed by, and that such usage was known to and relied upon by the driver, the plaintiff in this case, at the time of the accident; we say to you that such method of dealing with the public on the part of the company, and so known to the driver, may be taken into account by you in estimating the degree of diligence required of the plaintiff in looking out for an approaching car before he crossed the railway track; for in such case he might reasonably presume or infer the continuance of that usage.

To justify such presumption, however, such usage must have been uniform and continuous; even then the failure to observe such usage would not amount to negligence on the part of the defendant company. It would not relieve the driver of reasonable care in making such crossing. He would have no right so to presume, if he actually saw the car coming down upon him; or if by the reasonable use of his senses he might have seen its approach.

It may be stated that, as a general rule, no legal right can grow out of mere courtesy, however uniform and long continued; nor will such courtesy impose a legal obligation upon the person extending it.

It is conceded in this case that the grade of Fourth Street

between West and Tatnall Streets is quite a steep down grade to the Tatnall Street crossing.

While the speed of trolley cars is not limited by law, yet in approaching such crossing it was the duty of the motorman to make the descent at such reasonable speed as not to put the car beyond his control; and as the danger of collision increased, if he saw or could see the danger, it was his duty to use all the means in his power to check or stop the car. (*Price vs. Warner Co.*, 1 *Pennewill* 472).

This does not impose upon the motorman, however, an impossibility. If he in fact did all that he could to control the speed of the car, under the circumstances, the company would not be liable.

It was, however, equally the duty of the plaintiff, the driver of the team, to use all reasonable care and precaution to prevent the accident.

"We will not attempt to specify the precise acts of precaution which are necessary to be done, or omitted by one in the management of an electric car, or by one in the management of or driving a wagon approaching a railway crossing. Such acts must depend upon the circumstances of each case, and the degree of care required differs in different cases. The general rule is that the person in the management of the car and the person driving the wagon are bound equally to the reasonable use of their sight and hearing for the prevention of accident, and to the exercise of such reasonable caution as an ordinarily careful and prudent person would exercise under the circumstances of a particular case."

"A person approaching a railway crossing with which he is familiar, is bound to avail himself of his knowledge of the locality and act accordingly. If the approach of the railway to the crossing be down a steep grade, whereby it is more difficult to stop or check a car, the driver of the vehicle should exercise more care than might be necessary where the approach of the railway was by a slight decline, upon a level, or by an ascending grade. If as he approaches the crossing his line of vision is unobstructed, he is bound to look for approaching cars in time (if

possible) to avoid collision with them, and if he does not look, and for this reason does not see an approaching car until it is too late to avoid a collision, he is guilty of negligence."

*Brown vs. Wil. City Ry. Co.*, 1 *Pennewill* 336; *Snyder vs. Peoples' Ry.*, 4 *Pennewill* 148–9.

Both the company and the driver of the team, the plaintiff in this case, were required to use such reasonable care as the circumstances demanded, an increase of care on the part of both being required when there is an increase of danger.

"The right of each one using the highway must be exercised with due regard to the right of the other, and in a reasonable and careful manner, so as not unreasonably or unnecessarily to abridge or interfere with the right of the other."

Some of the witnesses have testified that they heard the car bell ring coming down the hill, others that they did not hear it ring. The testimony of the former "witnesses is, of course, of more weight than that of those who merely say they did not hear the bell ring; which might reasonably be attributed to a want of attention at the time. Such negative testimony is usually of little value."

*Q. A. R. R. Co. vs. Reed,* 5 *Pennewill* 226.

The gist of this action is negligence, and the burden of proving the negligence of the defendant company rests upon the plaintiff in this case. If there was no negligence on the part of the company, your verdict should be for the defendant.

Even if there was negligence on the part of the defendant, yet if the negligence of the plaintiff contributed to the accident, or was the proximate cause thereof, your verdict should be for the defendant; for he would, in that case, be guilty of contributory negligence.

If you believe that at the time of the accident each party was using such reasonable care as the circumstances demanded, then the collision was simply an unvoidable accident and the plaintiff could not recover.

Should you be satisfied from the evidence that the negligence of the defendant was the sole and proximate cause of the alleged injuries, your verdict should be for the plaintiff, and for

such reasonable amount as will compensate him for his injuries resulting from the accident, including therein his pain and suffering in the past and such as may come to him in the future from his injuries, loss of wages, expenses for medical attendance, and other necessary expenses in seeking to cure himself or treating his injuries, and reasonable compensation for any permanent impairment of ability to earn a living in the future that you may find from the evidence.

Verdict for plaintiff for $3,000.