THE BALTIMORE & OHIO R. R. Co., a corporation of the State of Maryland, defendant below, plaintiff in error, *v.* CHARLES WALTER HAWKE, administrator of John L. Hawke, deceased, plaintiff below, defendant in error.

THE BALTIMORE & OHIO R. R. Co., a corporation of the State of Maryland, defendant below, plaintiff in error, *v.* CHARLES WALTER HAWKE, plaintiff below, defendant in error.

(*June* 19, 1928.)

WOLCOTT, Ch., HARRINGTON and RICHARDS, J. J., sitting.

*John W. Huxley, Jr.,* for defendant below, plaintiff in error.

*Charles F. Curley* for plaintiff below, defendant in error.

Supreme Court, Nos. 3 and 4, October Term, 1927.

Huxley, attorney for the plaintiff in error, contended that the evidence covered by assignments of error 1 and 2 was not admissible because the existence of the curve had not been pleaded. He cited *Campbell vs. Walker,* 1 *Boyce* 580; *Lofland Brickyard Cases,* 5 *Boyce* 150; *Padley vs. Director General,* 7 *Boyce* 394; *Shipman's Common Law Pl.* 203; *Saunders on Pleading and Evidence* 415; *Chitty's Pl.* 160, 213, 214 and 224; *Woolley on Del. Pract.* 342, 354. He, also, contended that Hawke was guilty of contributory negligence and, therefore, could not recover:

1. Because he had an unobstructed view in an easterly direction of 2,000 feet from the time he left the blinker light post until he reached the southbound track, and it is, therefore, presumed that he did not look, or, if he looked, that he did not heed what he saw. *Northern Pacific R. R. Co. v. Freeman,* 174 *U. S.* 379, 19 *S. Ct.* 763, 43 *L. Ed.* 1014; *Green v. Los Angeles, etc., R. Co.,* 143 *Cal.* 31, 76 *P.* 719, 101 *Am. St. Rep.* 68; *Oleson v. Lake Shore R. Co.,* 143 *Ind.* 405, 42 *N. E.* 736, 32 *L. R. A.* 149; *Allen v. Boston, etc., R. Co.,* 197 *Mass.* 298, 83 *N. E.* 863; *Weyl v. Chicago, etc., R. Co.,* 40 *Minn.* 350, 42 *N. W.* 24; *Myers v. B., etc., R. Co.,* 150 *Pa.* 386, 24 *A.* 747; *McCarthy v. Bangor, etc., R. Co.,* 112 *Me.* 1, 90 *A.* 490, *L. R. A.* 1915B, 140.

2. Because, if he could not otherwise be sure whether a train was approaching, it was his duty to stop and get out of his car and look, and if he relied upon hearing the train or its signals and took no other precautions he did so at his own risk. *B. & O. R. R. Co. v. Goodman,* 275 *U. S.* 66, 48 *S. Ct.* 24, 72 *L. Ed.* 167, decided by the Supreme Court of the United States October 31, 1927.

3. It is the duty of an automobile driver, when approaching a railroad track, where his view is obstructed, to stop, look and listen

for approaching trains at a time and place where stopping and where looking and listening will be effective; yet Hawke did not stop his automobile from the time he left the blinker post until he was on the westbound track, though if he had looked and listened at any time between those points he could have seen the train that killed him. *N. Y. Central R. R. Co. v. Maidment* *(C. C. A.)*, 168 *F.* 21, 21 *L. R. A. (N. S.)* 794; *Urias v. Penn. R. R. Co.*, 152 *Pa.* 326, 25 *A.* 566; *McGill v. Pitts. & West. Ry. Co.*, 152 *Pa.* 331, 25 *A.* 540; *Pa. R. R. Co. v. Yingling*, 148 *Md.* 169, 129 *A.* 36, 41 *A. L. R.* 398.

4. Because, even if the blinker lights at the crossing had stopped flashing, when Hawke started his car, he was bound to look and listen for approaching trains and if he had done so he would not have been hit by the westbound train. *Union Pacific R. R. Co. v. Rosewater (C. C. A.)*, 157 *F.* 168, 15 *L. R. A. (N. S.)* 803, 13 *Ann. Cas.* 851. See, also, *Brommer v. Pa. R. R. Co. (C. C. A.)*, 179 *F.* 577, 29 *L. R. A. (N. S.)* 924.

5. Because a traveler is not relieved from the imputation of negligence by looking when he could not see the approaching train and by failing to look when he could have seen it and avoided the danger. *Grand Trunk R. R. Co. v. Cobleigh,* 78 *F.* 784, 24 *C. C. A.* 342; *Fletcher v. Fitchburg R. R. Co.*, 149 *Mass.* 127, 21 *N E.* 302, 3 *L. R. A.* 743; *McCrory v. C., M. & St. P. R. R. Co. (C. C.)*, 31 *F.* 531; *Abbett v. Chicago, M. & St. P. Ry. Co.*, 30 *Minn.* 482, 16 *N. W.* 266; *Kwiotkowski v. Chicago & Grand Trunk Ry. Co.*, 70 *Mich.* 551, 38 *N. W.* 463; *Gardner v. Detroit, L. & N. Ry. Co.*, 97 *Mich.* 240, 56 *N. W.* 603; *Brommer v. Pa. R. R. Co. (C. C. A.)*, 179 *F.* 577, 29 *L. R. A. (N. S.)* 924.

Curley, attorney for the plaintiff below, contended that the existence of the curve was one of the existing circumstances that was admissible as a part of plaintiff's case, though not pleaded. He cited *Wilmington City Ry. Co. vs. White,* 6 *Penn.* 373.

HARRINGTON, J., delivering the opinion of the court:

The exceptions filed by the defendant below, the appellant in this court, raise three questions:

1. Was the evidence of Evans and McKelvey, both of whom testified for the plaintiff below, and whose testimony is set out in detail in the statement of facts, admissible under the pleading in this case?

2. If admissible under the pleadings, was the evidence produced by the plaintiff below of such a character that it raised an issue for the jury as to whether the two trains were on the curve at the same time, and whether the receding eastbound train concealed the approach of the westbound train to such an extent that it could not have been seen by John L. Hawke in time for him to have escaped injury and death, if he had exercised due care?

3. Did the trial court commit an error in failing to instruct the jury as to the effect of the testimony of those witnesses who swore positively that they saw or heard certain things and as to the effect of the testimony of those witnesses who merely said that they did not see or hear such things?

1. The record shows that the facts and circumstances testified to by Evans and McKelvey were not alleged in the plaintiff's declarations. The defendant below, plaintiff in error, therefore, not only contends that such evidence was not admissible over its objection, but that its admission constituted prejudicial and, therefore, reversible error.

Whether John L. Hawke was guilty of contributory negligence when he attempted to cross the railroad tracks at the North College avenue crossing was one of the issues presented in the court below, and the evidence of Evans and McKelvey had a direct bearing on that question.

It is true that the plaintiff was neither bound to allege, nor to prove lack of contributory negligence on the part of Hawke (*Smith v. Philadelphia, B. & W. R. Co.*, 1 *W. W. Harr.* [31 *Del.*] 503, 115 *A.* 416; *Queen Anne's R. R. Co. v. Reed*, 5 *Penn.* 226, 59 *A.* 860, 119 *Am. St. Rep.* 301), but the order of their proof was in the discretion of the trial court and while the evidence in question may have been more properly admissible in rebuttal, it clearly was not reversible error for that court to have admitted it in the primary case of the plaintiff below.

Whether, therefore, such facts should have been alleged in the declarations in order to have made them admissible as a part of the plaintiff's primary case need not be considered.

2. The existence of the loading pen, fences, etc., and that they constituted obstructions to the view of Hawke before he reached the blinker light post does not seem to be denied, but that anything else prevented his seeing the approaching train in time to have escaped injury is denied by the defendant below.

The record shows that the eastbound train was composed of 5, 6, or 7 cars besides the engine and tender; the average length of each car being from 75 to 80 feet, and the length of the engine and tender being about 90 feet. The minimum length of that train was, therefore, about 465 feet.

Its speed, when it crossed the North College Avenue crossing, was variously estimated at from 15 to 25 miles an hour, and when its rear end was between the North College Avenue crossing and a point from 50 to 60 feet east of that crossing, John L. Hawke started his automobile in low gear at a speed of from 4 to 5 miles, but not exceeding 5 miles an hour. The distance from the point where he started his automobile about 15 feet north of the blinker light post to the north rail on the westbound track, where he was hit by the westbound train, was about 26 or 27 feet, and that the train was moving at a speed of, at least, 50 and possibly 60 miles an hour.

It is true that the engineer denied that he was operating his train at that speed, but he apparently did not state the speed at which it was moving at the time. That it was running at a considerable speed is shown, however, by the fact that though the emergency brakes were applied at the time of the accident, and it was a light train, it did not stop until it had run 700 feet beyond the crossing.

As is pointed out by the attorney for the plaintiff below, at a speed of 15 miles an hour the eastbound train was moving 22 feet per second and at a speed of 25 miles an hour it was moving at 36 feet per second.

There is evidence in the record that there was a curve in both tracks of the Baltimore & Ohio Railroad Company east of the North

College Avenue crossing, and that if two trains, moving in opposite directions, were on the curve at the same time that the rear end of the eastbound train would conceal an approaching westbound train at a point about 500 feet east of the blinker light post on the north side of that crossing.

The record further shows that the distance of the point of concealment from the crossing under such circumstances would be materially reduced as a traveler approached the westbound track, and that it would be only about 400 feet from the center of the side track which was apparently between the light post and the main tracks.

While the length or angle of the curve does not seem to appear, considering the speed of the eastbound train, it must have taken that train somewhere between 9½ and 15¼ seconds to have cleared the curve; and it may have taken more than that time, depending upon the distance of the east end of the curve from Hawke, as he left the vicinity of the blinker light post and approached the crossing.

As a matter of fact, according to the calculation of the attorney for the plaintiff below, the minimum time in which this train could have cleared the curve must have been about 12½ seconds, and it might have been as much as 21½ seconds.

It is further pointed out by the attorney for the plaintiff below that, if Hawke was operating his machine at the rate of five miles per hour, or at 7½ feet per second, the 26 or 27 feet from the point where he started his car to the north rail of the westbound track would have been covered in about 4 seconds; if, therefore, the westbound train, which killed him, was approaching at a speed of 50 miles an hour or at the rate of 73 feet per second, it would have covered the distance from the point of the curve where it could have been seen from the blinker light post, or as Hawke approached the crossing, in from 5½ to 6¾ seconds.

While the evidence is conflicting, there is some testimony in the record that the blinker lights went out for a time shortly after the eastbound train had cleared the crossing.

■■    A railroad crossing is a place of danger.  Hawke was bound to anticipate that two trains, moving in opposite directions, might pass over the North College Avenue crossing at about the same time and that the noise made by one train might prevent his hearing the approach of the other.  If the crossing lights had gone out when he started his car, though he had not the right to consider that as an absolute guaranty of safety and was bound to exercise that degree 'of care and caution that a reasonable man would have exercised un- der similar circumstances, yet if, while in the exercise of such care and caution, nothing appeared to the contrary he had the right to presume from the fact that the lights had stopped blinking that he could cross in safety. *Welch v. B. & O. R. R.*, 7 *Penn.* 140, 76 *A.* 50; *Gray v. Pa. R. R. Co.*, 3 *W. W. Harr.* (33 *Del.*) 450, 139 *A.* 66.

It also appears from the testimony of the witnesses for the plain- tiff below that White, who was sitting on the front seat with Hawke, looked for approaching trains while the car was being operated at a rate of from 4 to 5 miles per hour in the 26 or 27 feet from the start- ing point to the track.  After the eastbound train had passed, and, according to the testimony produced by the plaintiff below, after the crossing lights had gone out, in approaching the crossing White first looked to the east and then to the west and then again to the east, when he discovered the approaching train.

■    As we view the record, there was, also, evidence that would justify the conclusion that both trains were on the curve at the same time and that the eastbound train concealed the approach of the westbound train and, therefore, obstructed Hawke's view of that train.

Considering the above evidence, we cannot say, as a matter of law, that Hawke was so clearly guilty of contributory negligence that the court below should have directed a verdict for the defend- ant. See *P., B. & W. R. R. Co. v. Buchanan*, 2 *Boyce* 203, 243, 78 *A.* 776; *Queen Anne's R. R. Co. v. Reed*, 5 *Penn.* 226, 59 *A.* 860, 119 *Am. St. Rep.* 301; *Knopf v. P., W. & B. R. R. Co.*, 2 *Penn.* 392, 46 *A.* 747; *Trimble v. P., B. & W. R. R. Co.*, 4 *Boyce* 523, 89

*A*. 370; *Gray v. Pa. R. R. Co.*, 3 *W. W. Harr.* (33 *Del.*) 450, 139 *A.* 66.

Having reached this conclusion, it seems unnecessary to consider the cases cited by the defendant below.

■ 3. The only other question to be considered is whether the trial court committed an error in failing to charge the jury as to the effect of positive and negative testimony, in accordance with the prayers of the defendant below.

The record shows that certain witnesses testified that the blinker lights at the North College Avenue crossing went out for a short time just after the eastbound train had cleared that crossing, but this evidence was as positively denied by certain other witnesses who testified that such lights continued to flash and were flashing when Hawke started his car and attempted to cross.

The evidence of both classes of such witnesses is, therefore, equally affirmative and positive, and there is no evidence in the record to which the prayer, with respect to the blinker lights, embodied in appellant's seventh assignment of error could have applied. *Winklebleck v. Winklebleck*, 160 *Ind.* 570, 67 *N. E.* 451; *C. & A. R. R. Co. v. Pelligreen*, 65 *Ill. App.* 333; *Alft v. Clintonville*, 126 *Wis.* 334, 105 *N. W.* 561; *Kelley v. Schupp, et al.*, 60 *Wis.* 76, 18 *N. W.* 725. The same comment applies to the headlights on the westbound train.

It does appear, however, that certain witnesses testified that the usual signals by bell and whistle were given by the westbound train as it approached the crossing, while certain other witnesses testified that they did not hear any such signals.

While there was, therefore, evidence before the trial court to support the instructions requested by the railroad company, it is contended that such instructions were prohibited by the fundamental law of this state. This contention is based on *Section 22* of *Article* 4 of the *Constitution* of 1897, which provides:

"Judges shall not charge juries with respect to matters of fact, but may state the questions of fact in issue and declare the law."

The trial court was in effect asked to instruct the jury that the testimony of those witnesses who said that they did not hear the

bell ring or the whistle blow was of much less value than the testimony of those witnesses who positively testified that such signals were given, and should, therefore, be given very little consideration in deciding upon a verdict.

The theory upon which instructions that negative testimony is entitled to less credit than positive testimony is necessarily based upon the contention that the failure of such witnesses to hear the bell ring or the whistle blow must have been because of faulty recollection, lack of attention, imperfect senses of hearing and the like. *P., B. & W. R. R. Co. v. Gatta*, 4 *Boyce* 38, 58, 85 *A.* 721, 47 *L. R. A.* (*N. S.*) 932, *Ann. Cas.* 1916E, 1227.

While such contentions would be matters of argument to the jury, the members of that body were the sole judges of the weight and effect of the evidence, and if the trial court had given the instructions prayed for, it would have violated the constitutional provision above referred to and invaded the province of the jury.

In considering the same question under a similar constitutional provision, the court in *Babb v. State*, 18 *Ariz.* 505, 163 *P.* 259, *Ann. Cas.* 1918B, 925, aptly said:

"To tell the jury that positive evidence is stronger than negative evidence, or that the evidence of one witness may outweigh the evidence of several witnesses is clearly a charge upon matters of fact and a comment thereon. It is a usurpation of the powers and duties of the jury. The court's duties are limited to a declaration of the law. When evidence has been admitted as competent and material in a case, it is the exclusive function of the jury to pass upon its weight and credibility."

In *Randall's Instructions to Juries, Vol.* 1, § 57, the author also says:

"Except in jurisdictions where the court is allowed to comment on the evidence, or express its opinion thereon, the general rule is both in civil and criminal cases that it is error as involving the province of the jury to instruct that more weight should be given to positive testimony than to testimony essentially negative, and such instructions are properly refused."

The following cases and textbooks are to the same effect: *Muncie Pulp Co. v. Keesling*, 166 *Ind.* 479, 76 *N. E.* 1002, 9 *Ann. Cas.* 530; *State ex rel. v. K. C., etc., Ry. Co.*, 70 *Mo. App.* 634; *Sheppelman v. People*, 134 *Ill. App.* 556; *Haun v. Rio Grande Ry. Co.*, 22 *Utah* 346, 62 *P.* 908; *L. N. A. & C. Ry. Co. v. Shires*, 108

*Ill.* 617; *Sumpter v. State,* 45 *Fla.* 106, 33 *So.* 981; *Birmingham Ry., Light & Power Co. v. Seaborn,* 168 *Ala.* 658, 53 *So.* 241; *Himrod Coal Co. v. Clingan,* 114 *Ill. App.* 568, 573; *Russell v. Oregon Ry. Co.,* 54 *Or.* 128, 102 *P.* 619; *Ayers v. Macoughtry,* 29 *Okl.* 399, 117 *P.* 1088, 37 *L. R. A.* (*N. S.*) 865; *Blashfield's Instructions to Juries,* § 337; *Randall's Instructions to Juries,* § 211; *Brickwood's Sacketts Instructions,* § 3303. See, also, *Thompson on Trials,* § 2417.

In fact, there seems to be little or no disagreement in the reported cases on this question. The only cases, outside of this state, cited by the appellants, are *Urias v. Pa. R. R. Co.,* 152 *Pa.* 328, 25 *A.* 566, and *Hildman v. City of Phillips,* 106 *Wis.* 616, 82 *N. W.* 566; but as neither Pennsylvania nor Wisconsin seem to have any constitutional or statutory provision prohibiting judges from charging on the facts, these cases would seem to have little or no bearing on the question presented by the sixth and seventh assignments of error.

The rule contended for by the appellant has, undoubtedly, been frequently applied in the trial courts of this state (*McGowan v. W. & P. T. Co.,* 5 *Boyce* 281, 92 *A.* 1015; *Riccio v. People's R. Co.,* 3 *Boyce* 235, 82 *A.* 604; *Culbert v. W. & P. T. Co.,* 3 *Boyce* 253, 82 *A.* 1081; *Campbell v. Walker,* 2 *Boyce* 41, 78 *A.* 601; *McCartney v. P. Ry. Co.,* 2 *Boyce* 191, 78 *A.* 771; *Lynch's Ex'rs v. Wil. City Ry. Co.,* 7 *Penn.* 192, 78 *A.* 636; *White v. Wil. City Ry. Co.,* 6 *Penn.* 105, 63 *A.* 931; *Queen Anne's Ry. Co. v. Reed,* 5 *Penn.* 226, 59 *A.* 860, 119 *Am. St. Rep.* 301; *Foulke v. Wilmington City Ry. Co.,* 5 *Penn.* 363, 60 *A.* 973); but the legality of such instructions, under the Constitution of 1897, does not seem to have been questioned.

It is true that it is contended that this exact question was passed on by this court in *Queen Anne's R. R. Co. v. Reed,* 5 *Penn.* 226, 59 *A.* 860, 119 *Am. St. Rep.* 301, and in *P., B. & W. R. R. Co. v. Gatta,* 4 *Boyce* 38, 58, 85 *A.* 721, 47 *L. R. A.* (*N. S.*) 932, *Ann. Cas.* 1916E, 1227; but the sole question in both of those cases was whether the trial court should have directed a verdict for the defendant below. What this court, therefore, passed on was merely whether the evidence before the trial court justified submitting the

case to the jury or whether that court should have given binding instructions for the defendant below.

The legality of any instructions as to the effect of positive and negative testimony was, therefore, not before this court in either of those cases.

Perhaps we might, also, add that the real issue in *Urias v. P. R. R. Co.*, 152 *Pa.* 328, above cited, was likewise whether the court below was in error in refusing to give binding instructions for the defendant in that court.

Our conclusion, therefore, is that the trial court committed no error in failing to charge the jury as to the effect of positive and negative testimony.

For the reasons above given, the judgment of the court below is affirmed.