WALTER KERN, Plaintiff-Appellee, v. BEATRICE L. AUTMAN, Defendant-Appellant.

(*December* 27, 1961.)

LYNCH, J., sitting.

*William F. Taylor* (of Morford, Young and Conaway) for Plaintiff-Appellee.

*Ralph F. Keil* (of Keil, Shaffer and Keil) for Defendant-Appellant.

Superior Court for New Castle County, No. 1014, Civil Action, 1961.

LYNCH, J.:

This case involves an automobile accident between the parties, which took place on the evening of April 28, 1961, at

about 8:15 P.M. on the parking area of the Wilmington Merchandise Mart, a suburban shopping center, located on and along Govenor Printz Boulevard, stretching between the Lea Boulevard and Edgemoor Road in suburban New Castle County, Delaware. The Merchandise Mart has an approximate total lot area somewhat in excess of 1,000,000 square feet. There are a number of stores located in the Mart area. The parking areas are painted to show individual parking spaces. There are traffic lanes, about two car lengths in width throughout the Mart, used by shoppers in going from one store to others. Evidence tended to show that in the intersection of these traffic lanes there was some kind of a marker which would denote the intersection of the traffic lanes. It does not appear how clearly these traffic lanes are marked.

There is no evidence before me which tends to show that the proprietor of the Merchandise Mart had adopted and posted any traffic rules and regulations. It would seem in light of the traffic problems that arise on the days and nights when there are many shoppers and the traffic is heavy in the parking areas, that the proprietor of the Mart would do well to consider adopting traffic rules and regulations,— perhaps in conformity with the existing State Statute—so that persons coming to shop at the Mart would have some rules or guides on how to proceed and, thus, be guided in using the traffic lanes.

Obviously, the statutory "Rules of the Road" are not applicable, since the Mart and its parking areas are on private property. The proprietor, however, could, by posting appropriate signs, adopt the statutory traffic rules and regulations which would, thus, put into effect the ideas that underlie and are now to be found in the statutory "Rules of the Road".

It may be pointed out, for what it is worth, that what are now known as the statutory "Rules of the Road", affecting the operation of vehicles and the rights and duties of operators of vehicles toward one another, are not of recent

origin, see *Wilson v. Rockland Mfg. Co.*, 2 *Harr.* 67; *Reynolds v. Naudain*, 2 *Harr.* 317; and *McLane v. Sharpe, et al.*, 2 *Harr.* 481. In these cases, which are more than 100 years old, no statutes were involved and yet our Court laid down Rules of the Road for guidance of such traffic as was then existent. Such "Rules of the Road" undoubtedly grew up by custom, 60 *C. J. S.* Motor Vehicles § 207, then and theretofore existent,—see and compare *State for the use of Thompson v. McClay*, 1 *Harr.* 520; *Tempelman v. Biddle*, 1 *Harr.* 522; *White v. Wilmington City Railway*, 6 *Penn.* 105, 111-112, 63 *A.* 931 (Super. Ct.) and *Wheatley v. The H & H Poultry Company*, 6 *Terry* 502, 504-506, 75 *A.* 2d 702 (Super. Ct. 1950)—and came to be recognized for what they were.

While the statutory "Rules of the Road" should not be applied as such, they are indicative of the manner and usage of persons operating various types of motor vehicles, dating back from the days of horse drawn vehicle to the automobile, and I cannot believe that a motorist who accommodates himself on the highway to the "Rules of the Road", as now codified by statute, puts aside and forgets those rules when he or she leaves the public highway and proceeds into and along private ways, including those to be found in parking areas in the modern suburban shopping centers, in disregard of them.

I think it is eminently proper to assume and expect motorists driving on these parking areas to operate their motor vehicles thereon in the same manner as they would operate them along the public highways and in obedience to the statutory "Rules of the Road". In *Gray, The Nature and Sources of the Law*, Chapter IX, pp. 235-236, and compare *Id.* Chapter XII, at page 293, *et seq.* the learned author commented:

"Another part of the law in which custom plays an important part is in cases of negligence, * * *. In determining whether a man has been reckless or negligent in doing or not doing an act, we do not inquire whether he has taken every possible precaution. The test is whether he has acted as a

reasonable man, and this must be settled largely upon whether he has acted in accordance with general practice, that is, on custom."

For these reasons I regard these statutory "Rules of the Road" as evidence of the customs that should and do guide the use of and traffic on traffic lanes in shopping centers, particularly at the Merchandise Mart, and as applicable to this case.

I cannot state too strongly that I am not applying the statutory "Rules of the Road" to the case at bar; rather I am looking to them as evidence of and expressing the customs, the manner and usages of persons operating motor vehicles as they usually drive on public highways, and how they accord their operation of motor vehicles in keeping with such "Rules of the Road". I am applying these statutory "Rules of the Road" to the operation of automobiles, regardless of the ownership of the property or the nature of the right of way over which they are being operated. I do this because I believe that the relative rights and duties of motorists, based on the statutory "Rules of the Road", can be properly applied and I see no reason why they should not be applied to the operation of motor vehicles in these parking areas and in the traffic lanes used in connection therewith in suburban shopping centers.

Attention is called to the fact that since 1923, ·33 *Del. L.* Ch. 5, pages 11, 12, a person seeking a license as an operator of motor vehicles has been required by law to be examined on "his knowledge of the requirements of the State motor vehicle laws and local traffic requirements", thus such a person is assumed to have become familiar with and to know the statutory "Rules of the Road". This, I believe, justifies my view that a custom of driving in accordance with the statutory "Rules of the Road" has developed over the past 38 years and is now well established. The statutory requirements, 33 *Del. L.* Ch. 5, pp. 11, 12, in effect since 1923, that an appli-

cant for an operator's license must show a knowledge of the statutory "Rules of the Road", in my opinion, meets any requirement that a custom be well established and of general knowledge. Compare *Tempelman v. Biddle, supra,* and *White v. Wilmington City Railway Co., supra.*

It appears from the testimony before me that plaintiff and defendant had been parked near the Strawbridge & Clothier store, situated at the Merchandise Mart. Both vehicles left their respective parking places and each headed in an easterly direction, but along separate lanes, but parallel in course. The plaintiff made a left-hand turn on his traffic lane and headed in a northerly direction and they approached one another at right angles. It was inevitable these motor vehicles would meet. It was raining and dark but each motor vehicle had their headlights on. There were few cars parked in the parking areas. The evidence clearly shows that Mrs. Autman could, had she had control of her car, have turned her car either to the right or to the left, if necessary, and, thus, avoided a collision in the intersection of the traffic lanes along which each was proceeding. The evidence is clear to me and I find that Mr. Kern's car entered the intersection first. His car was struck at the left rear wheel by the front of Mrs. Autman's car, as the Kern car was about through the intersection. After the two cars came together Mr. Kern's car continued approximately about one car length in his traffic lane and past the above mentioned intersection. Mrs. Autman's car came to a stop at the point of impact,—and this was in the intersection.

Each of the parties testified he or she was driving about 15 miles per hour; each admitted there was nothing to impede the vision of the other. Mrs. Autman testified she did not see Mr. Kern's car until it loomed up in front of her; Mr. Kern testified he saw Mrs. Autman's car on his left as he reached and entered the intersection, about three to four car lengths away. It is clear to me that Kern was probably three quarters of the way through the intersection at the time de-

fendant's car struck his left rear wheel, so I find he reached and entered the intersection first. Then, too, Mr. Kern was on the right of the Autman car and this has significance.

Mrs. Autman's counsel contends Mr. Kern was guilty of negligence, which should bar any recovery by him. The facts do not support such contention.

■■ The operator of a motor vehicle is under a duty to use due care at intersections, *Floyd v. Lipka*, 1 *Storey* 487, 148 *A.* 2d 541 (Sup. Ct. 1959); in fact, there is a particularly specific duty to maintain an adequate lookout at intersections. In light of Mrs. Autman's admission that she did not see what in fact was there requires I find that she was guilty of negligence.

■ Mr. Kern's car entered the intersection first and was on her right; Mrs. Autman was, therefore, under a duty, 60 *C. J. S.* Motor Vehicles § 362(b) (1) and (3), page 866; *Bennett v. Barber*, 7 *Terry* 132, 135, 79 *A.* 2d 363, 364 (Sup. Ct. 1951), applying the statutory Rules of the Road, to yield the right of way to the Kern car so as to permit it to proceed into and through the intersection without striking it.

■ I find no facts, as heretofore noted, tending to show any negligence on the part of Mr. Kern. He was not required to anticipate, *Floyd v. Lipka*, 1 *Storey* 487, 148 *A.* 2d 541 (Sup. Ct. 1959) and *Meding v. Robinson*, 2 *Storey* 578, 163 *A.* 2d 272, 277 (Sup. Ct. 1960), that Mrs. Autman was not maintaining a proper lookout and/or that she would not recognize her duty of care towards him by yielding at the intersection. He could properly assume she was on the lookout and would yield at the intersection, 60 *C. J. S.* Motor Vehicles § 361, p. 860.

Since the evidence adduced at the trial so clearly shows evidence of negligence on the part of Mrs. Autman and no negligence on the part of Mr. Kern, judgment will be entered

in favor of Mr. Kern and against Mrs. Autman for the amount of damages stipulated to.

Order on notice.