189 A.2d 423 (1963)
The PENNSYLVANIA RAILROAD COMPANY, a corporation of the Commonwealth of Pennsylvania, Defendant Below, Appellant,
v.
Ray THARP, Plaintiff Below, Appellee.
Supreme Court of Delaware.
February 28, 1963.
Petition for Reargument Denied March 21, 1963.
C. W. Berl, Jr., of Berl, Potter & Anderson, Wilmington, for appellant.
Gerald Z. Berkowitz, of Wahl, Greenstein & Berkowitz, Wilmington, for appellee.
Before SOUTHERLAND, C. J., and WOLCOTT and TERRY, JJ., sitting.
*424 WOLCOTT, Justice.
This is an appeal by the Pennsylvania Railroad Company from a judgment of $25,000 entered on a jury's verdict in a personal injury case.[*] At the close of the plaintiff's evidence, the Railroad moved for a directed verdict in its favor and renewed its motion to that effect at the close of all the evidence. Both motions were denied and the case submitted to the jury. Following the verdict, the Railroad moved for a new trial under Civil Rule 59 and for judgment N.O.V. under Civil Rule 50(b), Del.C. Ann. Both post-verdict motions were denied. The Railroad's appeal is from the judgment entered on the verdict, from the denial of its pre-verdict motions, and from the denial of its motions under Civil Rules 59 and 50(b).
Numerous points are raised by the appeal but, fundamentally, the questions before us are whether or not the evidence supports a finding of negligence on the part of the Railroad, and whether or not the evidence requires that the plaintiff be held guilty of contributory negligence as a matter of law, thus taking the case from the jury. Also, the Railroad argues that the verdict of $25,000 is so excessive under the circumstances as to require it to be set aside.
The accident out of which arose the plaintiff's personal injuries occurred on November 5, 1959 at the New Castle Avenue crossing of the Railroad's track in the City of Wilmington. The crossing in question is protected by a system of flashing lights and a warning bell set in operation by the approach of a train. At the time of the accident the plaintiff's evidence was to the effect that neither the warning bell nor the flashing lights were working when he tried to drive his truck across the tracks.
The plaintiff was thoroughly familiar with the crossing in question, and ordinarily used it three to five times a day. He testified that he never had had occasion to observe a train passing across New Castle Avenue when the flasher lights and warning bell were not working.
The plaintiff was proceeding south in his truck on the day in question. The Railroad's evidence is that in approaching the crossing from this direction, it is possible to see approximately 150 feet down the track to the right from the point where plaintiff testified he looked. On the other hand, the plaintiff testified that a loading platform and warehouse obstruct the view in this direction. A view of the scene of the accident in the course of the trial was had by the jury.
The plaintiff testified that as he approached the crossing, he looked to the right or west at a distance of approximately 40 or 50 yards from the crossing and saw no train approaching. He further testified that the warning signals were not in operation and that, in view of his knowledge of the crossing, itself, through his daily use thereof, he relied on the fact that the warnings were not operating. Thereafter, he did not see the train until just before it struck his truck. He shifted his truck into *425 second gear and proceeded into the crossing, relying upon the absence of warning signals and his failure to see any train approaching when he looked to his right.
On this showing and the view of the scene had by the jury, the trial judge submitted the issues to the jury which returned a verdict for the plaintiff in the amount of $25,000.
Following the filing of the Railroad's motion for a new trial, the trial judge, himself, viewed the scene of the accident and concluded to deny a new trial. The denial of a new trial was made upon the basis that the distances, the volume of traffic, the physical layout of the streets and tracks, and the age and intelligence of the plaintiff, posed a question for the jury as to whether or not his conduct was reasonable.
Initially, the Railroad argues that a verdict should have been directed in its favor by reason of the failure of the plaintiff to make out a prima facie case of negligence against it. We think, however, accepting the evidence offered by the plaintiff at its face value, that it would appear that the Railroad's warning system at the time was inoperative. Therefore, a finding of negligence on the part of the Railroad was justified.
The Railroad, however, primarily argues that the plaintiff was guilty of contributory negligence as a matter of law. The argument goes as follows: The plaintiff's own testimony shows that at a point 40 or 50 yards from the crossing he was proceeding at 18 miles per hour and that he then looked to his right and saw nothing. He did not thereafter look again to his right in reliance upon the absence of the warning signals maintained by the Railroad at its crossing. He testified that he could at any time have stopped his truck within five feet and that his hearing and eyesight were perfect. The Railroad, accordingly, argues that his failure to see the train approaching was an act of negligence on his part which bars his recovery.
The Railroad argues that a railroad crossing is a place of danger which must be recognized as such by persons crossing it, and that, accordingly, the failure of the plaintiff to observe the train at a time when he could have safely stopped his truck was, in itself, contributory negligence. The Railroad relies upon Tompkins v. Baltimore & O. Railroad Co., 7 Terry 156, 81 A.2d 288.
The Tompkins case, however, was a trial before the court without a jury, and had no element in it of the failure of warning signals maintained by the Railroad at the crossing to operate. Furthermore, the circumstances of the crossing were different. There was no audible warning system and no obstructions to view either up or down the track.
In any event, we think this case more analogous to Baltimore & O. Railroad Co. v. Hawke, 4 W.W.Harr. 25, 143 A. 27, in which the Supreme Court affirmed a judgment entered on a jury's verdict under somewhat similar circumstances. In the Hawke case the plaintiff had stopped pursuant to a red warning light to let a southbound train pass. The lights went out when the train cleared the crossing and he proceeded into the crossing and was struck by a northbound train concealed from his view by the first train. The court held that if warning signals are maintained, a traveler is entitled to rely upon them when they are not flashing a warning, provided that he does so in the exercise of due care and caution to see that which is there to be seen. Under the circumstances of the Hawke case, it was held that the plaintiff in that case had the right to presume from the fact that the warning lights went out that he could cross in safety.
The Hawke case is not dissimilar from the case at bar and, absent some showing that there was some other circumstance to put the plaintiff on notice that a train was approaching even though the warning signals were not operating, he was entitled to rely upon the nonoperation of the warning signals.
*426 The factual issue presented as to the exercise of due care and caution on the part of the plaintiff, under the circumstances, is a close and troublesome one. The jury had the benefit of a view of the physical circumstances of the crossing and of the obstructions to the view of a traveler using the crossing. This, coupled with a belief in the plaintiff's evidence that the warning system was inoperative, and the plaintiff's reliance upon that circumstance is sufficient, we think, to support the conclusion of the jury that the plaintiff proceeded with due care and caution on his part. It follows, therefore, that he is not guilty of contributory negligence as a matter of law.
The Railroad argues that its proof demonstrates, however, that it would have been a scientific impossibility for the warning signals not to operate since they are so designed and constructed that any malfunctions sets them off automatically. However, the system designed to insure the operation of the warning signals in the event of malfunction is a mechanical one, and it is, of course, common knowledge that mechanical devices oftentimes go awry. The safety device, therefore, built mechanically into the system could, itself, malfunction. In any event, it is the fact that the plaintiff produced testimony other than his own to the effect that the warning signals were not operating.
The Railroad complains of an instruction given by the trial judge to the jury to the effect that it is the law of this State that since a railroad crossing is a place of danger, the Railroad Company is bound to erect a system of warning signals so as to provide reasonable warning to persons about to cross its tracks. The jury was instructed that the type of warning which the Railroad is obligated to install depends upon the nature of the crossing and its physical surroundings.
This instruction is complained of on the basis that the plaintiff produced no evidence of any kind as to whether or not the crossing was improperly protected. The jury, however, viewed the crossing as a part of the plaintiff's evidence and the instruction given it was undoubtedly correct and did not prejudice the defendant with respect to the type of warning required to be given. We think that no prejudice resulted to the Railroad by reason of this instruction.
Finally, the Railroad argues that the verdict was so excessive as to require that it be set aside. The difficulty with this argument is that the proven life expectancy of the plaintiff, and his loss of earnings resulting from his injuries, fully support the verdict. While the verdict may seem high, it is not, as a matter of law, under the circumstances, excessive.
The judgment below is affirmed.
NOTES
[*] Subsequent to the entry of judgment and during the pendency of this appeal, the plaintiff died and his administrator was substituted as a party.